This is an appeal from a judgment rendered against defendant Dr. Graham Wood and for plaintiff Central Bank of the South for breach of an indemnity agreement contained in an instrument signed by the defendant wherein he sought to have payment stopped on a cashier's check purchased by the defendant and payable to a third party. The case below was heard ore tenus.
In October of 1978 Dr. Wood purchased cashier's check number 001973 in the amount of $6,000 from the Gurley Branch of Central Bank of the South (Central) payable to Ken Walker and delivered it to Walker.
In September of 1979 the bank's branch manager informed Wood by telephone that *Page 1289 
the check to Walker was outstanding. Wood subsequently signed a form prepared by the bank requesting that payment be stopped on the check and a replacement check issued. The nature of the agreement between Wood and Central is the subject of this dispute. In the agreement, Wood represented to Central that the cashier's check was lost and that he was entitled to the proceeds thereof. It also contained the following pertinent provisions:
 "The undersigned hereby requests you to stop payment of said instrument and that you . . . deliver to the undersigned a replacement instrument. . . .
 "In consideration of your compliance with said request in reliance upon the above representations, the undersigned, W.G. Wood, M.D. principal . . . hereby agree(s) to indemnify, keep indemnified and save you harmless from and against any and all claims, demands, actions, proceedings, judgments, lawsuits, damages, counsel fees, payments, expenses and liabilities whatsoever which you, at any time shall or may sustain or incur by reason of: (a) your having complied with said request; or (b) any claims or demands, whether groundless or otherwise, which may be made with respect to said instrument; or (c) your declining to honor said instrument; or (d) the payment, honor or transfer or credit, which you may give, make or permit with respect to said instrument, whether through inadvertence, accident, oversight, neglect or otherwise. The liability of the undersigned principal and surety under this agreement shall accrue forthwith upon the presentation for payment of the original Instrument issued by [the bank] and claimed to have been lost, stolen or destroyed. . . ."
In response to Wood's execution of statement of loss and agreement of indemnity, Central's branch manager notified the other offices of the alleged loss and issued to Wood its cashier's check for $6,000 as a replacement of the "lost" check. Wood subsequently received payment of the latter check.
About April of 1980 Walker attempted to cash the original cashier's check at his bank in Pennsylvania. The bank refused to cash the check, apparently because Central refused to verify it. Walker then called Central and asked why the check could not be cashed. He was informed of the stated loss and directed to contact Wood. Walker contacted an attorney and was told that the check should be payable. He then deposited it in his checking account and it was honored through normal banking channels.
On or about September 19, 1980, internal auditors for Central discovered that the check to Walker had been paid. Wood was informed that the check had been cashed and that according to the agreement he would have to repay the bank $6,000. Wood refused.
On January 5, 1982, Central initiated an action against Wood alleging that he owed the bank $6,000 under the September 11, 1979, indemnity agreement. The bank also claimed attorney's fees and interest due. Judgment was rendered for the bank for $6,000 on April 21, 1982. On May 21, 1982, Wood filed notice of appeal. Central cross-appeals, claiming error in the failure to award interest and attorney's fees.
The first issue is whether the court abused its discretion in finding for the plaintiff. In cases heard ore tenus, the judgment will be reversed only where it is plainly and palpably wrong, or where the trial court misapplied the law to the facts. Alabama Farm Bureau Mutual Insurance Co. v. Davis,354 So.2d 15 (Ala.Civ.App. 1978). There must be no credible evidence in the record to support the court's findings. Gann Lewis Roofing Co. v. Sokol, 359 So.2d 815 (Ala.Civ.App. 1978). If there is disputed evidence, the trial court's findings of fact are presumed correct. Campbell v. Campbell, 371 So.2d 55
(Ala.Civ.App. 1979). We have carefully reviewed the record and find no abuse of discretion. Although the evidence is often in conflict, there is evidence to support the trial court's findings. Under the presumption of correctness given cases of this nature, we find no abuse of *Page 1290 
discretion in the trial court's findings of fact.
Wood contends that the trial court misapplied the law to the facts in two instances: (1) in granting judgment for the bank on an agreement which the bank itself breached; and (2) in granting judgment for the bank on an agreement the bank intentionally breached.
Wood claims that Central breached the agreement by making payment on the cashier's check and therefore is precluded from recovering on that agreement. This argument hinges upon the court's interpretation of the agreement.
A cashier's check is the obligation of the bank which issues it; it is not an item payable from a customer's account within the meaning of § 7-4-403, Code of Alabama 1975. A cashier's check is accepted in advance by the act of its issuance and is not subject to a stop payment order. Walker v. Sellers,201 Ala. 189, 77 So. 715 (1918); Dziurak v. Chase Manhattan Bank,N.A., 44 N.Y.2d 776, 406 N.Y.S.2d 30, 377 N.E.2d 474 (1978). Such a rule is necessary to insure the public's confidence in and reliance upon our banking system. Moon Over the Mountain,Ltd. v. Marine Midland Bank, 87 Misc.2d 918, 386 N.Y.S.2d 974
(N.Y.Civ.Ct. 1976).
Wood contends that whether or not the bank could legally ignore his stop payment order is irrelevant, since Central agreed to stop payment in a separate, written instrument. Central now seeks to enforce the indemnity provision of that agreement, and Wood contends the agreement should fail for lack of consideration. Wood argues that Central did not keep its end of the bargain, and therefore should not be able to force him to keep his end.
Central contends that the payment to Wood of the $6,000 was adequate consideration for the agreement. We agree. The instrument in question clearly states that the replacement check is consideration for the indemnity agreement, along with the agreement to stop payment.
Central's payment of the cashier's check did not constitute a breach of the agreement. The agreement must be analyzed in terms of the nature of a cashier's check, and it is in the nature of a cashier's check that the bank is not free to refuse payment thereon when the check is presented by the payee or holder in due course at another bank and arrives at the payor bank in regular course of business. Moon Over the Mountain,Ltd. v. Marine Midland Bank, supra. Furthermore, by the clear and unequivocal terms of the agreement, Wood's liability accrued "forthwith upon the presentation for payment" of the original check. It is clear that the "stop payment" agreement was founded upon a "lost, stolen or destroyed" check. The evidence is undisputed that the check was purchased by Wood and presented to the payee Walker in due course of business. The check was not, in fact, lost, stolen or destroyed. Insofar as Central could do so, payment was stopped through notice to its offices.
Wood further contends that the agreement was not intended to invoke his liability upon an intentional payment of the check by Central Bank. We find that the language of the agreement supports the conclusion that Wood's obligation to indemnify would arise in the event the alleged "lost check" was presented and paid in any event. The agreement states that Wood would be liable for any payment made on the check, "whether through inadvertence, accident, oversight, neglect or otherwise." Such an agreement recognizes the absolute liability of Central to honor its cashier's check when presented by the payee in the ordinary course of business.
Wood contends that such an agreement violates both the Uniform Commercial Code and the common law. Wood cites §§7-4-103, -403, Code 1975, in support of his contention. We do not agree with that contention. It is clear from § 7-4-403 and its official comment that there is no right to stop payment on certified or cashier's checks, for they are direct obligations of the bank and not of the customer. Thus there would seemingly be no barrier to an agreement *Page 1291 
such as is before us. In such an instance the bank was not required by statute to stop payment, but we perceive no reason why it should not attempt to aid its customer upon a claim of loss, theft or destruction, particularly if the bank replaces such check upon agreement for indemnity if the check later turns up and is paid or forced to be paid by the drawee or a holder in due course.
Wood cites Commercial Bank v. Hall, 266 Ala. 57, 94 So.2d 198
(1957) in support of his contention that the agreement is violative of public policy under the common law. The case cited is inapposite. Commercial Bank involved a stop payment order on an uncertified check. None of the cases cited by Wood involve a certified or cashier's check. The issue presented here is not a breach of an agreement to stop payment of a check written against a customer's account, but rather whether Wood is liable to indemnify Central for payment to him of $6,000 upon his representation that the cashier's check was lost.
We find sufficient evidence to support the judgment in favor of Central. Finding no misapplication of the law to the facts, we affirm that judgment.
Central cross-appeals, contending two errors below: (1) failure to grant attorney's fees as provided in the agreement, and (2) failure to grant interest due on the $6,000 at six percent from September 19, 1980, through the date of judgment. Central contends that the indemnity agreement enforced by the court below specifically provided that Wood would be liable for attorney's fees. We consider the terms and purpose of the agreement as to payment of attorney fees relate to those fees incurred by Central in defending against claims or actions arising from its stopping or denying payment of the check when it might be presented for payment. There were no such fees or expenses incurred by Central. The trial court may have considered that part of the agreement to be ambiguous. In such case, it was proper to construe it most strictly against its author, Central. Jewell v. Jackson Whitsitt Cotton Co.,294 Ala. 112, 313 So.2d 157 (1975); Wiregrass Construction Co. v.Tallapoosa River Electric Cooperative, Inc., 365 So.2d 95
(Ala.Civ.App. 1978). We affirm the decision of the trial court not to award attorney's fees.
Finally, Central contends the trial court committed reversible error in not awarding interest on the judgment. Section 8-8-8, Code 1975 states:
 "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."
Under this statute, pre-judgment interest runs only on such sums as are certain or are capable of being made certain. Roev. Baggett Transportation Co., 326 F.2d 298 (5th Cir. 1963). Three general rules have been laid out for determining the allowance of interest in Alabama: "(1) The amount due must be certain; (2) the time when it is due must be certain; (3) the amount due and time of payment must be known to the debtor."Grand Bay Land Co. v. Simpson, 207 Ala. 303, 306, 92 So. 789,791 (1922) citing Perley, Law of Interest 25-32 (citation omitted). Here, the amount due, $6,000, was certain as of the moment Central paid the check and made demand upon Wood. The indemnity agreement provided that Wood would be liable upon presentation for payment of the original check. Interest was therefore due from the date that Dr. Wood was notified of his liability, September 19, 1980. The trial court was in error in not awarding interest on the $6,000 from that date.
The judgment rate at the time this cause of action accrued was six percent. Five hundred seventy-nine days elapsed between September 19, 1980, and April 21, 1982, the date of the judgment. The court below should have awarded interest in the amount of $571.07 for that period of time. As authorized by §12-22-70, Code 1975, this *Page 1292 
court renders judgment in favor of Central and against Wood in the sum of $6,571.07.
Central Bank has moved this court for attorney's fees on appeal. In view of the trial court's judgment and our affirmation thereof, the motion is denied.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
BRADLEY and HOLMES, JJ., concur.