This is an appeal from a judgment entered on a jury verdict in favor of the defendant in a wrongful death action tried on a count of wantonness. We affirm.
On April 10, 1981, Dana LaGail Kent, the deceased daughter of the plaintiff, was killed in a single-vehicle accident on Cow Pen Creek Road in Escambia County, Alabama. Kent and the defendant,[1] Perry Franklin Singleton, both eleventh grade students at Escambia Academy, were on their way to a store after leaving a party celebrating their junior-senior prom. As they were traveling on Cow Pen Creek Road in a pickup truck owned by the defendant's father, the defendant lost control of the vehicle, and it left the road. As a result of the accident, Dana Kent was killed and the defendant sustained serious injuries.
At trial, the defendant testified that he had no opinion as to how fast he was traveling prior to the accident, but that he did not remember traveling at an excessive speed. Two state troopers testified, however, that in their opinion the defendant was traveling at a speed of at least 80 miles per hour.
After the accident, the defendant was taken to Greenlawn Hospital in Atmore, Alabama, where he was given a blood alcohol test at the direction of Woodrow D. Stewart, a state trooper who investigated the accident.[2] The test revealed a blood alcohol level of .12, but the record does not disclose the identity of the person who withdrew the blood sample from the defendant, nor whether standard procedures *Page 358 
were followed for taking blood alcohol tests.[3]
This case was tried before a jury in the Circuit Court of Escambia County. During the course of the trial, the plaintiff attempted to offer into evidence results of the blood alcohol test; the offer was objected to by the defendant, and the objection was sustained by the trial judge. At the conclusion of the evidence, the case was sent to the jury, which returned a verdict for the defendant. A timely post-trial motion for a judgment notwithstanding the verdict or, in the alternative, a new trial was made by the plaintiff and denied by the trial judge.
The following issues are raised by the plaintiff on appeal:
1. Did the trial court err in refusing to admit the results of the blood alcohol test administered on the defendant?
2. Was the jury verdict contrary to the great weight and preponderance of the evidence?
We answer both questions in the negative. For sake of clarity, we discuss the issues separately.
The plaintiff argues that he complied with the requisites of Ala. Code 1975, § 32-5A-194 (1983 Repl.Vol.), which authorizes the introduction of blood alcohol test results into evidence. We have held that to admit test results pursuant to the predecessor of § 32-5A-194, which was similar to the present statute with regard to the matter now in question, the party must strictly comply with the statute. Patton v. City ofDecatur, 337 So.2d 321 (Ala. 1976); see also, Lankford v.Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App. 1977). Thus, we must determine whether the plaintiff strictly complied with § 32-5A-194. For purposes of our inquiry, the relevant portion of § 32-5A-194 reads as follows:
 "When a person shall submit to a blood test at the direction of a law enforcement officer under the provisions of section 32-5-192, only a physician or a registered nurse (or other qualified person) may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath or urine specimens." (Emphasis added.)
Kathy Folmar, a registered lab technologist employed at Greenlawn Hospital at the time of the accident, testified as to the circumstances surrounding the withdrawal of the blood sample from the defendant. On cross-examination, Ms. Folmar testified:
"Q. Did you see the blood drawn yourself?
"A. No, sir, I didn't.
 "Q. Did you see the procedure that was followed to draw the blood?
"A. No, I didn't. I was not in the emergency room.
"Q. I am sorry?
 "A. "I was not in the emergency room when it was drawn.
"Q. Do you know who was in the emergency room?
"A. No, sir, I do not.
 "Q. So you can't testify of your own personal knowledge as to how that blood was drawn other than what you think the hospital policy is?
 "A. I did not see it but I know the procedure and policy.
 "Q. But you don't know of your own personal knowledge that that procedure and policy was followed, do you?
"A. No, I don't."
As the testimony of this witness demonstrates, it cannot be determined that the blood sample taken from the defendant was withdrawn by a person authorized under the statute. We conclude, therefore, that the trial court correctly refused to admit this evidence pursuant to § 32-5A-194.
The plaintiff argues alternatively that the test results are admissible without reference to § 32-5A-194. Indeed, this Court has held that the statute is not an exclusive *Page 359 
means for admitting blood alcohol test results. Thus, inMcGough v. Slaughter, 395 So.2d 972, 977 (Ala. 1981), we stated:
 "[E]ither defendant must have shown the tests were taken in conformity with § 32-5-193 [the predecessor of § 32-5A-194], or he must have laid the proper foundation for their admission under general evidence principles." (Emphasis added.)
In Aycock v. Martinez, 432 So.2d 1274 (Ala. 1983), we discussed the requirements necessary for the admission of blood alcohol test results pursuant to general evidence principles. There, in determining whether an adequate foundation had been established where a blood sample had been taken by a coroner, we said:
 "While we find no Alabama cases which specifically outline all the requisite elements of a predicate for the admission of scientific test results, it is generally held that such a predicate must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable. See, e.g., 29 Am.Jur.2d, Evidence, 830 (1967)."
432 So.2d at 1277.
The plaintiff contends that the circumstances of this case adequately insure the reliability of the blood alcohol test performed on the defendant. We do not agree.
The record does not indicate that the test performed on the defendant was conducted according to accepted scientific methods. The record is silent with respect to the qualifications of the person who withdrew the blood sample. All that the record shows is that on April 10, 1981, a blood sample was taken from the defendant at Greenlawn Hospital by a person whose qualifications are unknown. The mere fact that the blood sample was taken at a hospital does not insure its reliability.
The plaintiff also contends that the jury verdict in this case is unjust and should be set aside. Where the jury verdict is not plainly erroneous, however, we cannot consider other possible conclusions that might have been reached. Elba WoodProducts, Inc. v. Brackin, 356 So.2d 119 (Ala. 1978). A jury verdict is presumed correct and will not be set aside unless it is so contrary to the evidence "as to convince this court that it is wrong and unjust." Dixie Electric Company v. Maggio,294 Ala. 411, 318 So.2d 274 (1975). Moreover, this presumption of correctness is strengthened where, as here, the trial court denies a motion for a new trial based upon a claim that the verdict is not supported by the evidence. Smith v. Blankenship,440 So.2d 1063 (Ala. 1983).
The jury as the trier of fact is in a better position than this Court to make determinations based upon evidence submitted at trial, and after reviewing the record, we find that there is sufficient evidence to sustain the jury's decision. We decline, therefore, to set aside the verdict.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] While both Perry Franklin Singleton and his father, Albert Franklin Singleton, were named as defendants, we will refer to the son as "the defendant."
[2] By his own admission at trial, the defendant had consumed at least three and perhaps as many as five cups of beer prior to the accident.
[3] Testimony was adduced at trial which described standard procedures for withdrawing blood for blood alcohol tests. Significantly, the area of the subject's body from which the blood is drawn is cleaned with a non-alcohol solution to preserve the integrity of the sample.