It appears to me that the majority has reached the right result in this case, but for the wrong reasons. The majority summarily concludes that "[b]ecause the alleged conversion was of a check, which is ordinarily a negotiable instrument," the provisions of Alabama's Commercial Code pertaining to negotiable instruments apply in this case. Applying those provisions pertinent to the conversion claim, the majority affirms the judgment notwithstanding the verdict ("JNOV") granted in favor of Kafko on that claim. I agree that the JNOV was proper in this case but not because plaintiffs failed toprove a scintilla of evidence on their claim for conversion. Rather, JNOV was proper because at issue in this case is the conversion of a cashier's check, and the overwhelming majority of courts have held that cashier's checks are substitutes for cash. See National Newark Essex Bank v. Giordano, 111 N.J. Super. 347, 268 A.2d 327 (1970); Lawrence, Making Cashier'sChecks and Other Bank Checks Cost-Effective: A Plea forRevision of Articles 3 and 4 of the Uniform Commercial Code, 64 Minn.L.Rev. 275, 285 (1980); 4 Hawkland, Alderman Schneider, U.C.C. Series, § 3-104:16, "Cashier's Checks" (1984).
 I.
There is no explicit reference to cashier's checks in Article 3. In fact, the Code's only reference to cashier's checks is in § 4-211(1), which merely enumerates the types of payment that collecting banks may take in settlement of an instrument for the payment of money. This omission from Article 3, as well as the common belief that cashier's checks are cash equivalents, has led courts to conclude that, even when the instrument is held by one who is not a holder in due course, neither the purchaser of the cashier's check (the plaintiffs in this case) nor the issuing bank can assert an adverse claim to the instrument, such as the claim that the instrument's holder is in wrongful possession of the instrument or its proceeds. See Lawrence, supra, 64 Minn.L.Rev. 275 at 306-07. Thecommentators, *Page 719 
however, generally take the position that, in this situation, the provisions of the Code governing ordinary negotiable instruments should also govern the respective rights of the parties to a cashier's check. 64 Minn.L.Rev. at 305.
The majority, apparently without realizing it, has followed the view of the commentators, evaluating (albeit erroneously, see discussion infra) the parties' respective rights by reference to the pertinent provisions of Article 3. This approach, however, has not been followed by the various courts which have heretofore been called upon to decide the issue. Almost uniformly, the courts have ignored the Code and have subordinated the interests of the issuing bank and the check's purchaser to the holder's (including a holder not in due course) expectation that he has received a true cash equivalent, thereby preserving the societal interest in having cashier's checks serve as cash substitutes. 64 Minn.L.Rev. at 280, 305. Indeed, this Court has held that the purpose of a cashier's check is "to enable the holder to use the check as money." Walker v. Sellers, 201 Ala. 189, 77 So. 715 (1918). Moreover, "[a] cashier's check is accepted in advance by the act of its issuance and is not subject to a stop payment order." Wood v. Central Bank of the South, 435 So.2d 1287, 1290
(Ala.Civ.App. 1982). Such rules are necessary "to insure the public's confidence in and reliance upon our banking system." 435 So.2d at 1290.
 II.
If this Court adopts the majority view, then the plaintiffs' claim for conversion must fail. Having chosen to use a cashier's check, a cash substitute, as the means of payment, plaintiff bears the burden of loss by conversion, for no action for conversion will lie as to unidentifiable funds or cash. SeeLewis v. Fowler, 479 So.2d 725 (Ala. 1985), where this Court discussed at length the circumstances under which an action for conversion will lie to recover a sum of money. Specifically, we said:
 "Now, in conversion cases, the courts are not confronted so much with a particular piece of money, i.e., a coin or a bill, but with identified or segregated sources from which money has come or types of accounts into which money has been deposited.
 "Money paid by an insurance company to a hospital which had been assigned to the hospital by the plaintiff has been determined as a matter of law not to be specific property which would support an action of conversion. Humana of Alabama, Inc. v. Rice, [380 So.2d 862 (Ala.Civ.App. 1979), cert. denied, 380 So.2d 865 (Ala. 1980)]. Shares in a 'Ready Assets Trust Account' which must be redeemed for cash and on which checks can be written have been held to be sufficiently identifiable to support an action in conversion. Limbaugh v. Merrill Lynch, Pierce, Fenner Smith, Inc., 732 F.2d 859 (11th Cir. 1984) (citing Alabama law).
 "Section 7 of the Annotation, 'Nature of property or rights other than tangible chattels which may be subject to conversion,' 44 A.L.R.2d 927 (1926), lists numerous cases in which attempts have been made to recover for the conversion of money.
 "In this case, the Court is being asked to determine whether money which was withheld from wages of an employee by an employer in response to a garnishment filed against the employer by a creditor of the employee is specific property which will support an action in conversion. Clearly, there is no identifiable coin or bill, and nothing that has been sealed up in a particular letter, 'wrapped up to itself,' or placed in a bag or chest. There is no evidence that this money was placed in a special account. It is merely money which was not paid to an employee or to the creditor of an employee, but was withheld from an employee's wages in response to a garnishment." (Emphasis added.) 479 So.2d at 726-27.
Plaintiffs in this case cite Lewis v. Fowler, supra; however, they fail to point to any evidence of record establishing the identifiability of the sum represented by the cashier's check. They argue that the special account at the issuing bank, into *Page 720 
which their money was deposited at the time they purchased the cashier's check from the bank, would be a specific or special type of account into which the money had been deposited. This argument, however, overlooks the fact that the funds in this account are comingled; that is, the monies deposited as payment for a particular cashier's check are comingled with funds to cover other cashier's checks, and, according to the evidence, these funds are indistinguishable.
Plaintiffs also cite this Court to Limbaugh v. Merrill Lynch,Pierce, Fenner Smith, 732 F.2d 859 (11th Cir. 1984), cited in this Court's opinion in Fowler, supra. In Limbaugh, the court, citing Alabama law, held that funds contained in a "Ready Assets Trust Account" belonging to the plaintiff were sufficiently identifiable to support plaintiff's conversion claim. In that case, the plaintiff, Charles Limbaugh, failed to deliver 182 shares of stock to cover a sale made for him by Merrill Lynch. So, Merrill Lynch liquidated a portion of his Ready Assets Trust Account to buy shares for delivery to the purchaser.
Limbaugh is distinguishable from the present case because, inLimbaugh, all of the funds in the account in question belonged to the plaintiff. Here, the funds paid by plaintiffs for the cashier's check were placed by the bank into a comingled account containing funds paid by other individuals for cashier's checks. Under these facts, plaintiffs have failed to prove "specific money capable of identification." Hunnicutt v.Higginbotham, 138 Ala. 472, 35 So. 469 (1903). For these reasons, I would affirm the JNOV for Kafko.
However, under the approach taken by the majority, I do not think the granting of a JNOV was proper under the evidence adduced in this case. The standard of review applicable in this case is not stated in the majority opinion, but because it is essential to a proper review to bear it in mind, that standard of review is set out here: When reviewing the propriety of a trial court's order granting a JNOV, the evidence must be viewed in the light most favorable to the party who secured the jury verdict; a JNOV carries no presumption of correctness.Warren v. Ousley, 440 So.2d 1034 (Ala. 1983). Rather, "a jury's verdict is presumed correct and will not be set aside unless it is so contrary to the evidence 'as to convince this Court that it is wrong and unjust.' Dixie Electric Co. v. Maggio, 294 Ala. 411, 318 So.2d 274 (1975)." Kent v. Singleton, 457 So.2d 356,359 (Ala. 1984).
The majority evaluates plaintiff's conversion claim based on its conclusion that the alleged conversion was of a negotiable instrument. To defeat plaintiffs' claim, the majority, relying on Code of 1975, §§ 7-3-104, -105, -304, and -305, holds as amatter of law, that Kafko, the payee of the cashier's check, was a holder in due course, and that it, therefore, "did not wrongfully take the check, illegally assume ownership of it, or illegally use or misuse it." I would agree that if there was noevidence in this case from which a jury could conclude that Kafko was not a holder in due course, then plaintiffs could not recover in conversion. In other words, if the evidence was such that we could hold, as a matter of law, that Kafko was a holder in due course, it could not be liable for conversion. The majority's analysis, however, seems to overlook the principle that the question of holder-in-due-course status is one offact, not law. Indeed, every element of holder-in-due-course status presents a question of fact, and there is at least a scintilla of evidence presented in this case from which the jury could have found that Kafko was not a holder in due course.
Relying on § 7-3-105(1)(b), the majority concludes that the language appearing on the check, "For pool kit to be delivered to Rt. 1, Box 22," does not prevent the check from being anunconditional promise to pay within the § 7-3-104 definition of a negotiable instrument. While this conclusion is probably correct (see Holsonback v. First State Bank of Albertville,394 So.2d 381 (Ala.Civ.App. 1980), cert. denied, 394 So.2d 384
(1981); Strand Amusement Co. v. Fox, 205 Ala. 183, 87 So. 332
(1921); Anderson v. Consolidated Auto Wholesalers, Inc., 4 U.C.C.Rep.Serv. 205 (N.Y. Sup. Ct. 1967)), the majority's further conclusion, *Page 721 
that this notice could not, as a matter of law, serve as "notice" to Kafko of a claim by the plaintiffs (listed as remitters on the check), is erroneous.
Under the former Uniform Negotiable Instruments Law, most courts held that a payee, not having taken the instrument by negotiation, could not be a holder in due course. Now, under §§ 7-3-302 and 7-1-201(20), a payee who can meet the requirements of holder-in-due-course status may qualify as a holder in due course; that is, he must take for value, in good faith, and without notice of any defense against or claim to the instrument by any person. This is often difficult to prove, because, in most cases, the payee of an instrument is a party to the underlying transaction and is, therefore, charged with notice of any claims or defenses arising therefrom. See 4 Hawkland, supra, §§ 3-302:03 and :04. Nevertheless, a payee who has not dealt with the person asserting the claim must meet the requirements of holder-in-due-course status. See 4 Hawkland, § 3-302, Official Comment 2, Example (a).
In this case, Kafko was the payee named on the cashier's check, not Morgan, Kafko's dealer. Yet, notwithstanding the fact that Kafko was the named payee on a cashier's check remitted from a consumer, with whom it was its practice not to deal, and that the check was for an amount $3,200 in excess of the year-old overdue debt owed by Morgan, the majority holds,as a matter of law, that "Kafko was not bound to inquire of its dealer whether he [Morgan] had delivered the pool purchased with the money represented by the check." While this conclusion would be correct if Morgan, as payee, had negotiated the check to Kafko in payment of Morgan's debt, it is not a correct conclusion to draw on these facts. Morgan merely delivered the check to Kafko, the named payee. Morgan did not endorse the check to Kafko, and thus it was for the jury to decide whether Kafko, as payee under these circumstances, was justified in relying on Morgan's misrepresentations as to the purpose of the check, and wrongfully applying the proceeds. Yet, the majority purports to weigh these facts itself and concludes that "Morgan served as an intermediary and his misrepresentations prevent Kafko from having notice of Strickland's claim." The jury, however, obviously believed that, under these circumstances, Kafko should have made further inquiries, and that its failure to do so made its application of the check to Morgan's benefit "wrongful" and, therefore, a conversion.
Section 7-3-304 lists several situations in which notice of certain facts will be deemed to give a purchaser or payee of an instrument notice of a claim or defense. However, § 7-3-304
"does not contain an exhaustive list of when a holder has notice of a claim or defense. Whenever a particular situation is not specifically covered by § 3-304, the general admonition found in § 3-302(1)(c) that a holder must be without notice of any defense against or claim to the instrument on the part of any party controls." 4 Hawkland, supra, § 3-304:2 at 414. The standard applicable to § 7-3-302(1)(c) is found in the definition of "notice" contained in § 7-1-201(25). That section provides that a payee has "notice" of a claim when:
"(a) He has actual knowledge of it; or
 "(b) He has received a notice or notification of it; or
 "(c) From all the facts and circumstances known to him at the time in question he has reason to know that it exists."
In the present case, however, resort need not be made to §§ 7-3-302(1)(c) or 7-1-201(25), because § 7-3-304(1)(a) is specifically applicable to these facts. Section 7-3-304(1)(a) provides in pertinent part that:
 "(a) The purchaser [or payee] has notice of a claim or defense if:
 "(a) The instrument is . . . so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; . . ."
(Emphasis added.) Under this section, a payee does not have notice of a claim unless the irregularity "is such as to excite suspicion in the [payee] that . . . [the instrument] is not owned by the party from *Page 722 
whom [it] was obtained, or . . . it cannot be determined from the instrument who is entitled to payment." 4 Hawkland,supra, § 3-304:11, at 430. It appears from the unqualified use of the phrase "call into question," that the standard intended to apply to such situations is whether a reasonable person
would question its validity, terms, or ownership. Id.
The jury in this case could have easily found that just based on what appeared on the face of the check, a reasonable person in Kafko's position would have realized that an ambiguity existed as to Morgan's ownership rights in the check and therefore as to the proper party to pay, and would have questioned its right to apply the check to satisfy Morgan's overdue debt and refund him the difference.
These same facts go to the good faith element of holder-in-due-course status. However, the test for good faith is a subjective one which required Kafko to prove to the satisfaction of the jury that it had a "white heart" or was honest in fact. Thus, even the failure to inquire into what may be viewed objectively as suspicious circumstances may not amount to a lack of good faith. However, the facts may be so suspicious that a jury may not believe the holder's assertions that he was honest in fact. 4 Hawkland, supra, § 3-302:02 at 268. For example, evidence that the holder was negligent in failing to investigate suspicious circumstances may lead to a jury to conclude that the holder wanted to evade the knowledge that an investigation would have disclosed. Id. Under such circumstances, a jury's finding of a lack of good faith could be upheld.
The majority holds that Kafko acted in good faith, blithely concluding that "there is no indication in the record that [Kafko] had any way of verifying or disproving Roger Morgan's explanation of the check." With all respect, I would point out that this is a conclusion of fact, and there is at least a scintilla of evidence to the contrary. Both of the plaintiffs' names appear as remitter on the check, "Lloyd Strickland and Linda I. Strickland," as well as their address, "Rt. 1, Box 22, Enterprise, Alabama." A simple telephone call to the plaintiffs would have certainly "verified" Morgan's explanation. Unquestionably, on these facts, a jury could have found Kafko's failure to investigate to be evidence of a lack of good faith. Based on the foregoing, I, therefore, cannot agree that we can hold, as a matter of law, that Kafko was a holder in due course, and thereby affirm the JNOV entered in favor of Kafko.
The only question remaining is whether plaintiffs adduced a scintilla of evidence of a conversion of the instrument. "To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." Ott v. Fox,362 So.2d 836, 839 (Ala. 1978). Plaintiffs apparently concede that, having failed to prove a demand for a return of the converted property from Kafko, they cannot prevail on a wrongful detention theory of conversion. Raley v. Royal Ins. Co., Ltd., 386 So.2d 742
(Ala. 1980). Nevertheless, without the necessity of repeating the evidence in this case, it is quite clear that the evidence adduced presented a jury question as to whether Kafko illegally used or misused the cashier's check if it is viewed as an ordinary bank check. See Ott v. Fox, supra. Compare Barrett v.Farmers Merchants Bank of Piedmont, 451 So.2d 257 (Ala. 1984). The alleged conversion in this case took place before the check was "paid" by the payor bank (see Lowremore v. Berry, 19 Ala. 130
(1857)), and, therefore, whether the plaintiffs were wronged by Kafko's use or misuse of the check presented a fact question for the jury. Herron Motor Co. v. Maynor, 232 Ala. 319,167 So. 793 (1936). For these reason, I would reverse the JNOV entered in favor of Kafko if the cashier's check is regarded as an ordinary bank check rather than as a cash substitute.
To summarize, I concur in the result reached by the majority upholding the JNOV on plaintiff's conversion claim because I would hold that a cashier's check should be treated as a cash equivalent rather than as an ordinary bank check. The majority, however, adopts the latter view; *Page 723 
I dissent not only as to the adoption of that view, but also as to the majority's analysis thereunder in holding that, as a matter of law, Kafko was a holder in due course. Because there was evidence to the contrary, the issue of holder-in-due-course status was one of fact for the jury, and, on that basis, the JNOV on the conversion count was improper.
JONES, J., concurs.