KENNEDY, Justice
(dissenting).
A majority of this Court has voted to summarily affirm the trial court’s order reinstating the jury’s verdict in favor of the defendant State Farm Mutual Automobile Insurance Company (“State Farm”). Because I think that in the trial of this case the court erred in such a manner as to substantially prejudice the plaintiff, I must respectfully dissent.
Daniel Scott Smith was driving an automobile on McFarland Boulevard in Tuscaloosa on December 23, 1994. His girlfriend, Martin Gibson, and her cousin, Tyson McRee, were riding in the automobile with him. The automobile crashed; Daniel Scott Smith and McRee were killed. Based on his belief that the driver of an unidentified vehicle had caused the crash that lulled his son, Daniel Scott Smith’s father, Danny Smith, acting individually and as personal representative of his son’s estate, made claims upon State Farm for benefits under the uninsured-motorist provision of insurance contracts the Smith family had with State Farm. State Farm denied the claims.
Danny Smith sued State Farm in the Circuit Court of Tuscaloosa County, claiming (1) breach of the insurance contracts and (2) bad-faith failure to pay the insurance claims. Before trial, State Farm moved for a summary judgment on the bad-faith claim, and the trial court granted its motion. The case proceeded to a jury trial on the claim alleging a breach of the insurance contract.
At trial, Danny Smith presented evidence-indicating that Daniel Scott Smith’s automobile had been forced off the road as a result of wanton conduct on the part of an unidentified person driving a red Ford Mustang automobile. However, State Farm attempted to rebut Smith’s claims by presenting evidence indicating that no other vehicle had forced Daniel Scott Smith’s automobile from the road. State Farm also presented evidence indicating that Daniel Scott Smith was intoxicated by alcohol at the time of the crash. At the close of testimony, the trial court’s instructions to the jury included a charge on “sole proximate cause.” The jury returned a general verdict for State Farm, and the court entered a judgment for State Farm based upon that verdict.
Danny Smith moved for a new trial. He had argued at trial that he would have been entitled in a wrongful-death action to recover on a wantonness or negligence theory against the unidentified (and therefore uninsured) driver who he said caused the accident. In his new trial motion, he claimed that the court had improperly charged the jury on the issue of “sole proximate cause,” thus directing the jury’s attention to Daniel Scott Smith’s possible contributory negligence in such a way as to cause the jury not to consider Danny Smith’s claim of wantonness, which would not have been barred by contributory negligence. Upon this ground, the court set aside the jury’s verdict and granted Danny Smith’s motion for a new trial.
State Farm filed a motion asking the trial court to reconsider its order granting a new trial. In support of its motion, State Farm filed affidavits in which jurors stated that in reaching its verdict the jury did not consider any possible contributory negligence on the part of Daniel Scott Smith. In response, Danny Smith filed a motion to strike State Farm’s juror affidavits, contending that they were obtained in an improper manner. Alternatively, he moved the court to consider additional affidavits offered in rebuttal to the affidavits submitted by State Farm. Danny Smith’s juror affidavits stated that in reaching its decision the jury did in fact consider *127 the possible contributory negligence of Daniel Scott Smith.
State Farm objected to Danny Smith’s tender of juror testimony, arguing that Danny Smith’s juror affidavits were offered to impeach the verdict, in violation of Rule 606(b), Ala. R. Evid. The trial court, in refusing to consider Danny Smith’s juror affidavits, stated that the “plaintiff presented no legal authority, and this court could find no authority” to permit the court to consider Danny Smith’s juror affidavits. Thereafter, the trial court granted State Farm’s motion and reinstated the jury’s verdict.
Danny Smith appealed, making two arguments: (1) that the trial court admitted evidence of Daniel Scott Smith’s intoxication without the proper evidentiary foundation, and (2) that the trial court erroneously refused to consider the juror affidavits Smith offered in rebuttal to those submitted by State Farm with State Farm’s motion for reconsideration.

I. Blood Alcohol

First, Smith contends that the trial court erred in admitting evidence of Daniel Scott Smith’s blood-alcohol content to indicate that he was intoxicated at the time of the accident. He argues that State Farm failed to lay the proper evidentiary foundation for the admission of this evidence.
State Farm argues that the evidence was admissible, based upon general evidence principles. Accordingly, it contends that the trial court properly admitted the evidence of Daniel Scott Smith’s blood-alcohol level.
It is fundamental that a party wishing to introduce the results of a blood-alcohol test into evidence must first lay the proper predicate. The party is required to show that the test was taken in conformity with Ala.Code 1975, § 32-5A-194, or, in the alternative, the party must lay the proper foundation for its admissibility under general evidentiary principles. Kent v. Singleton, 457 So.2d 356 (Ala.1984). Section 32-5A-194(a), provides, in relevant part:
“(1) Chemical analyses of the person’s blood, urine, breath or other bodily substance to be considered valid under the provisions of this section shall have been performed according to methods approved by the Department of Forensic Sciences and by an individual possessing a valid permit issued by the Department of Forensic Sciences for this purpose....”
In Kent, with an opinion authored by Justice Shores, this Court noted that to admit test results under § 32-5A-194, the court must determine that the party offering the evidence has strictly complied with the statute. 457 So.2d at 358. In Kent, in determining whether the evidence had been obtained in strict compliance with § 32-5A-194, this Court looked to the testimony of a registered laboratory technologist who testified as to the circumstances surrounding the withdrawal of the blood sample. The lab technologist testified as follows:
“Q. Did you see the blood drawn yourself?
“A. No, sir, I didn’t.
“Q. Did you see the procedure that was followed to draw the blood?
“A. No, I didn’t. I was not in the emergency room.
“Q. I am sorry?
“A. I was not in the emergency room when it was drawn.
“Q. Do you know who was in the emergency room?
“A. No sir, I do not.
“Q. So you can’t testify of your own personal knowledge as to how that blood was drawn other than what you think the hospital policy is?
“A. I did not see it but I know the procedure and the policy.
“Q. But you don’t know of your own personal knowledge that that procedure and policy was followed, do you?
“A. No, I don’t.”
Id. at 358. Thereafter, this Court went on to write:
“As the testimony of this witness demonstrates, it cannot be determined that the blood sample taken ... was withdrawn by a person authorized under the statute. We conclude, therefore, that the trial court *128 correctly refused to admit this evidence pursuant to § 32-5A-194.”
Id. at 358.
In the present case, Dr. Joseph Embry, who was called to testify to the circumstances surrounding the withdrawal of blood from Daniel Scott Smith, testified, in relevant part, as follows:
“Q: All right. Will you agree with me that on that specific occasion, you— you don’t know whether you drew the blood on Scott Smith or not?
“A: I don’t, no, sir.
“Q: You agree with me, right?
“A: That’s correct
“Q: And will you agree with me that you can’t recall one way or the other whether Mr. Brand drew the substances?
“A: He — either, he or I did it, probably, yes, sir.
“Q: Well, that wasn’t what I asked you. You say he or I probably. You can’t remember whether Mr. Brand did it or not, can you?
“A: That’s correct.
[[Image here]]
“Q: My only follow-up and final question is: You can’t say, doctor, that you put the needle in Scott Smith?
“A: No, sir.
“Q: And you can’t tell us that Mr. Brand did it?
“A: That’s correct.
“Q: You didn’t see him do it, did you?
“A: I don’t know if I saw him do it or not. I don’t have an independent recollection of that.
“Q: Right. And there is nothing in your file to indicate it; isn’t that right?
“A: That’s correct.
“Q: So you’re just doing it like — saying well, it must have been me or him because we are the only ones there except those other two?
“A: That’s correct.”
As was the ease with the foundational witness in Kent, Dr. Embry was completely unable to present any useful information concerning the procedure used to obtain blood from Daniel Scott Smith. Moreover, Dr. Embry admitted that, although files were routinely maintained on the work performed by his office, he had no information in the file addressing the circumstances of the procedure in question. Accordingly, I conclude that the blood-alcohol evidence could not be admitted into evidence under Ala.Code 1975, § 32-5A-194.
Nevertheless, this Court has held that § 32-5A-194 is not an exclusive means for admitting blood-alcohol test results. Another means for making such evidence admissible is to lay a foundation for its admission under general evidence principles. This Court, in Kent (cited in the majority’s no-opinion memorandum), discussed the requirements necessary for the admission of blood-alcohol test results pursuant to general evidence principles:
“ ‘While we find no Alabama cases which specifically outline all the requisite elements of a predicate for the admission of scientific test results, it is generally held that such a predicate must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate an reliable.’ ”
457 So.2d at 359, quoting Aycock v. Martinez, 432 So.2d 1274, 1277 (Ala.1983) (citing 29 Am.Jur.2d Evidence § 830 (1967)). (Emphasis added.) Moreover, a continuous chain of custody must always be shown. Ex parte Williams, 548 So.2d 518 (Ala.1989). I recognize that the trial court is vested with judicial discretion in evaluating the sufficiency of a predicate for admission of evidence and that the trial court’s determination in that regard is not reversible except for an abuse of discretion. However, where the proper predicate is not established, the admission of blood-alcohol test results is reversible error. Whetstone v. State, 407 So.2d 854 (Ala.Crim.App.1981). Given this Court’s decision in Kent, and the factually deficient testimony of Dr. Embry, I would hold the blood-alcohol evidence inadmissible for want of the proper predicate. Accordingly, I consider the ad *129 mission of the blood-alcohol evidence to warrant reversal.

II. Juror Affidavits

Next, I consider whether the trial court erred in failing to consider the juror affidavits proffered by Danny Smith. State Farm contends that the new-trial order was properly set aside on the basis of the juror affidavits it presented to the trial court. Moreover, State Farm asserts that the trial court erred in considering Danny Smith’s juror affidavits because, it argues, they were intended to impeach the jury’s verdict and, therefore, were inadmissible under Rule 606(b), Ala.R.Evid. However, Smith contends that the juror affidavits he presented were not submitted for the impermissible purpose of impeaching, the jury’s verdict and, therefore, that the trial court should have considered them. Again, I consider the actions of the trial court to warrant reversal.
Although Rule 606(b) clearly provides that a juror may not testify to impeach a verdict, when Danny Smith presented the affidavits the trial court had already set aside the jury’s verdict and had granted Smith a new trial. Therefore, there was no verdict in place to trigger the limitations of Rule 606(b). Smith submitted the affidavits to rebut the affidavits submitted by State Farm and to support the trial court’s original decision to grant a new trial.[1]
In addition, the affidavits Danny Smith proferred contained information that might tend to show State Farm had obtained signatures on its juror affidavits by coercion and deceit. In particular, one affidavit presented by Danny Smith stated that the juror was contacted by Conley W. Knott, an attorney for State Farm, and was erroneously led to believe that she was the only juror who had not signed one of State Farm’s .pattern affidavits. Another juror affidavit presented by Danny Smith stated that the juror was contacted by a State Farm attorney and, before being asked to sign a pattern affidavit, was advised of the fact that Danny Smith was challenging the jury’s decision. Therefore, I would hold that the trial court could have considered Smith’s affidavits as bearing directly on the propriety of State Farm’s affidavits.
Based on the foregoing, I dissent from the majority’s summary affirmance of the trial court’s order reinstating the jury verdict.

. In its original order setting aside the jury’s verdict, the trial court admitted that it had erred in charging the jury on "sole proximate cause” because the contributory negligence of Daniel Scott Smith was not an issue in the case and the remaining claim was based solely on wantonness. The trial court noted in its order that "the charge of the court could have been perceived by the jury to make contributory negligence a defense to wantonness.” Several of this Court's decisions support that conclusion. See Barfield v. Wright, 286 Ala. 402, 240 So.2d 593 (1970); Lindsey v. Kindt, 221 Ala. 190, 128 So. 139 (1930); Boyette v. Bradley, 211 Ala. 370, 100 So. 647(1924).