This appeal concerns the availability of prejudgment interest as an element of recoverable damages in the context of a dispute involving a construction contract.
Robert Jernigan, a sole proprietor who does business under the trade name "Jernigan Construction Company," entered into an agreement in November 2001 with Charles Happoldt and Melinda Happoldt under which Jernigan agreed to construct a new residence for the Happoldts. According to the parties' written contract, payment for Jernigan's work was to be made partially on a fixed-wage basis and partially on a "cost-plus" basis, with Jernigan being responsible for providing the Happoldts with copies of bills with respect to his materials and his subcontractors' charges and with the Happoldts being responsible for paying each of those bills plus a 10% additional charge. Although Jernigan estimated that the Happoldts' residence would cost $151,400 to build, there is no indication in the contract documents that Jernigan agreed to be bound by that figure, and the evidence in the record indicates that a number of changes were made to the original plan of the residence during its construction.
At the end of each month for the first five months after Jernigan began performance under the contract, Jernigan gave the Happoldts a copy of his bills and a copy of the time sheet listing the hours that Jernigan's personnel had worked, after which the Happoldts wrote checks to Jernigan in satisfaction of those obligations; the sum of those payments exceeded $100,000. *Page 766 
However, when Jernigan presented bills to the Happoldts in March 2002, the Happoldts represented to Jernigan that "they were out of money," after which Jernigan briefly discontinued work. The Happoldts then told Jernigan that they wanted him to complete his performance under the contract and stated that they would pay him from the proceeds of a long-term mortgage loan (to be secured by the residence) that they would be obtaining after the residence was completed; Jernigan then resumed his work on the residence and his presentation of bills to the Happoldts. On July 5, 2002, after all work had been performed on the residence except for installation of carpeting, roofing materials, and siding, and Jernigan had presented all of his bills (totaling $41,929.38) to the Happoldts for payment without protest, Jernigan was informed by Charles Happoldt that the Happoldts would be occupying the nearly completed residence, that the final mortgage loan would soon be closed, and that Jernigan would be paid immediately thereafter. However, one week later, Charles Happoldt told Jernigan that the Happoldts "did not have the money" and would not pay Jernigan any further sums.
In September 2002, Jernigan filed in the Escambia Circuit Court a civil action naming as defendants the Happoldts, their mortgage company, and a paint supplier that had allegedly supplied materials directly to the Happoldts but had charged Jernigan for those materials. As to the Happoldts, Jernigan asserted fraud, breach-of-contract, and conspiracy claims and sought the imposition of a lien upon the real property upon which the residence had been constructed. The Happoldts asserted a counterclaim against Jernigan sounding in fraud and breach of contract, and the paint supplier asserted a counter-claim against Jernigan, a cross-claim against the Happoldts, and a third-party claim against Jernigan's son. The claims asserted by and against the paint supplier were dismissed pursuant to a settlement agreement, and a nonfinal summary judgment was entered as to all claims asserted by Jernigan against the mortgage company, leaving only Jernigan's claims and the Happoldts' counterclaims pending.
Although the case was placed on the trial court's administrative docket in March 2004 after the Happoldts had sought relief in the United States Bankruptcy Court for the Southern District of Alabama, the trial court subsequently set the case for trial after the bankruptcy court entered an order lifting its automatic stay. After an ore tenus proceeding, the trial court entered a judgment on September 6, 2005, generally in favor of Jernigan. In that judgment, the Happoldts were directed to pay Jernigan $37,488.31 plus 12% interest on that amount, and a lien on the pertinent real property was imposed. The judgment also expressly denied the Happoldts' counterclaims.
On September 7, 2005, the Happoldts filed a "motion to reconsider" the judgment entered on the previous day; in that motion, the Happoldts asserted that a copy of the judgment (as proposed by counsel for Jernigan) had been sent via facsimile transmission to their attorney on September 2, 2005, but that the Happoldts' attorney had not had an opportunity to review the proposed judgment and state objections to its contents before its entry. The Happoldts argued that "additional time [was] required to review and research the judgment and [that] the judgment [was due to] be set aside." Counsel for the Happoldts then submitted a proposed "Order to Vacate Judgment" deleting the references to prejudgment interest — deletions to which Jernigan objected. Nonetheless, the trial court entered the proposed postjudgment order on September 29, 2005; that order vacated the September 6, 2005, *Page 767 
judgment and replaced it with a new judgment that was identical to the original judgment in all respects except that no prejudgment interest was awarded.
Jernigan appeals from the trial court's substituted judgment, challenging the deletion of the prejudgment-interest provision from the trial court's original judgment. As to the applicable standard of appellate review, we agree with Jernigan that because the trial court's determination concerning the availability of prejudgment interest is a legal one, focusing on the application of law to the facts rather than the resolution of factual disputes, no presumption of correctness applies to that determination, and we review it de novo.Continental Cas. Co. v. Plantation Pipe Line Co.,902 So.2d 36, 45 (Ala. 2004).
Section 8-8-8, Ala. Code 1975, provides:
 "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."
We noted in Wood v. Central Bank of the South,435 So.2d 1287 (Ala.Civ.App. 1982), that "[u]nder this statute, pre-judgment interest runs . . . on such sums as arecertain or are capable of being made certain" (emphasis added), and that "[t]hree general rules have been laid out for determining the allowance of interest in Alabama: `(1) The amount due must be certain; (2) the time when it is due must be certain; (3) the amount due and time of payment must be known to the debtor.'" 435 So.2d at 1291 (quotingGrand Bay Land Co. v. Simpson, 207 Ala. 303, 306,92 So. 789, 791 (1922)).
The record in this case reveals that the parties entered into an express written contract under which Jernigan was to receive wage payments of $19 per hour for his own work, $16 per hour for work performed by carpenters he employed, and $9 per hour for work performed by his other laborers. Jernigan was also contractually bound to "provide the [Happoldts] with proof [of] bills for material and subcontractor work with an additional 10% of [the] total [to be] added to each bill." The written contract envisioned that Jernigan would be paid as to wages every two weeks and as to material and subcontractor work no later than the eighth day of each month. Although the parties appeared to have adhered to that presentment and payment schedule for the first few months of the construction, the Happoldts' representation in March 2002 that they were "out of money" appears to have ended that practice. In contrast, when Jernigan resumed work on the residence, he did so on the stated basis that he would be paid the sums owed him after the residence was completed from the proceeds of the Happoldts' long-term mortgage loan. Although Jernigan presented final bills to the Happoldts upon their moving into the house, Jernigan received no further payment from the Happoldts.
The trial court's reversal of its position with respect to its award of prejudgment interest may stem from its view, expressed during a colloquy during trial, that prejudgment interest would not be awardable except pursuant to a written contract. We question the application of that view to the facts of this case, in which the parties undisputedly did enter into a written contract but later orally agreed to modify the Happoldts' payment obligations under that contract. It is well settled that "[a] written contract may, in the absence of statutory provisions requiring a writing, *Page 768 
be modified by a subsequent oral agreement,"Winegardner v. Burns, 361 So.2d 1054, 1057 (Ala. 1978), and there is no contention in this case that the parties' contract was one that, by statute, could be modified only in writing. Moreover, by its plain terms, § 8-8-8 speaks toall contracts, whether express or implied, [1] and contains no language that would bar its application to only written contracts.
The Happoldts contend that Jernigan's damages were not capable of being made certain at the time of the Happoldts' breach of the contract, relying upon evidence tending to show that Jernigan's $151,400 cost estimate was merely a "ballpark figure" that did not show precisely what the residence would cost to build and that was based upon inexact prices. However, as we have noted, the Happoldts initially agreed to pay specified wages plus 110% of subcontractor charges and material expenses that were billed by Jernigan on a monthly basis; that obligation was modified only as to the due date of payment to Jernigan by the parties' subsequent agreement for Jernigan to accept payment from the Happoldts' mortgage-loan proceeds. At the time that Jernigan presented the Happoldts with invoices for labor and materials expended as to the residence after Jernigan returned to work after March 2002, the Happoldts could have determined that Jernigan would have been damaged in the precise amount of those invoices plus 10% by a failure or refusal to pay. In this case, then, each of the prerequisites for awarding prejudgment interest — certainty of the amount due and the time when it is due and knowledge of the debtor as to the amount due and the time of payment — is present.
We conclude that the trial court erred in denying prejudgment interest on the damages awarded to Jernigan. The judgment is reversed and the cause is remanded for the trial court to calculate prejudgment interest on the damages amount ($37,-488.31) from the date of the Happoldts' loan closing in July 2002, at the statutory interest rate of 6% per annum.See Ala. Code 1975, § 8-8-1 ("[e]xcept as otherwise provided by law, the maximum rate of interest upon the loan or forbearance of money, goods, or things in action, except by written contract is $6 upon $100 for one year"), andBurgess Mining Constr. Corp. v. Lees,440 So.2d 321, 338 (Ala. 1983).
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] "A contract is express if its terms are stated by the parties, either orally or in writing, and it is implied if its terms are not so stated[, i.e.,] some or all of the terms are inferred from the conduct of the parties and the circumstances of the case." 17A Am.Jur.2d Contracts
§ 12 (2004) (footnotes omitted).