[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 974 
The issue presented in this appeal relates to the admissibility of the results of a blood test for intoxication where the blood sample is taken from a deceased person by an embalmer. More specifically, we must decide whether blood alcohol test results from samples obtained by authority of Code 1975, § 22-19-80, are per se admissible. We find that compliance with § 22-19-80 alone does not make the blood tests admissible, and we hold that general evidence principles regarding admissibility of scientific test results are applicable. Because the circuit court admitted evidence for which no predicate was laid, we reverse.
A pickup truck driven by Thomas McGough collided with a tractor-trailer driven by Francis Slaughter. The incident occurred at night, and, at the time of the collision, the Slaughter tractor-trailer was blocking the road on which Mr. McGough was traveling. The impact killed Mr. McGough, and his body was taken to Jones Funeral Home in Greenville, Alabama, for burial preparation.
At the direction of a law enforcement official, a licensed mortician took a blood sample from the body of Mr. McGough. The mortician, Larry Jones, was not a doctor, registered nurse, or licensed clinical lab technologist or technician. Laboratory analysis showed alcohol in the blood sample amounted to .18 grams percent by weight.
Cathy McGough, the administratrix of the estate of Mr. McGough, filed suit against Mr. Slaughter, alleging the wrongful death of Mr. McGough. The attorney for plaintiff filed a motion in limine, seeking to exclude evidence of the blood test and results. At the motion hearing, plaintiff argued that the blood test was not taken in conformity with either Code 1975, § 32-5-193, or the Court of Civil Appeals interpretation of that statute in the case. Lankford v. Redwing Carriers,Inc., 344 So.2d 515 (Ala.Civ.App. 1977). The defendant argued that the legislature abrogated Lankford by passing Code 1975, §§ 22-19-80 through -82. The judge agreed with defendant and denied plaintiff's motion.
At trial defendant's attorney sought to introduce results of the test. Over plaintiff's objection, the test results were revealed to the jury. Plaintiff's motions for directed verdict, judgment notwithstanding the verdict, and for new trial challenged, among other things, the admission of the results of the test on the ground the results were from tests not taken in conformity with Code 1975, § 32-5-193, and on the ground no proper predicate was laid before admission of the results. All the motions were denied, and plaintiff appealed from the trial judge's failure to grant a new trial.
 I.
As a preliminary matter, we address defendant's motion to dismiss plaintiff's appeal. As grounds for his motion, defendant asserts that in her brief plaintiff does not argue error in the judge's failure to grant a new trial. Instead, plaintiff argues there was error in the judge's ruling on the motion in limine and in his ruling on the admissibility of the alcohol blood test results. Defendant, however, fails to recognize that the scope of appellate review is not limited by the notice of appeal designation of the judgment or order appealed, whether appeal is taken from the final judgment or from the order denying a motion *Page 975 
for new trial. ARAP 3 (c); Reach v. Reach, 378 So.2d 1115
(Ala.Civ.App. 1979). Except in rare instances (e.g., sufficiency of the evidence), errors asserted at trial may be raised on appeal without regard to whether such errors were raised, or whether adverse rulings were invoked, in the motion for new trial. ARAP 4 (a)(3); Reach v. Reach, 378 So.2d 1115
(Ala.Civ.App. 1979). The issues raised in plaintiff's brief are properly before us, and defendant's motion is denied.*
 II.
The legislature has by statute remedied many of the problems involved in laying a foundation for admission of intoxication test results, at least where the action arises from operation of a vehicle. See Code 1975, § 32-5-193.
 Under [such a statute], the questions of relevancy, and to a large extent of weight, of the evidence, have thus been legislatively resolved. The [statutory intoxication] presumptions have been upheld by the courts . . . and the prescription for test procedures adopted by the state health agency has been taken as acceptance of the general reliability of such procedures in showing blood-alcohol content.
E. Cleary, McCormick's Handbook on the Law of Evidence § 209 at 513 (2d ed. 1972) (footnotes omitted).
A party offering results from tests shown to be given in conformity with the statute is relieved of the burden of laying the extensive predicate generally necessary for admission of scientific test results.
Code 1975, § 32-5-193, applies to admission of blood alcohol test results into evidence.
 § 32-5-193. Admissibility of results of test in evidence; presumptions; how and by whom tests made; immunity from liability; evidence of refusal to submit to test.
 (a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time of the chemical test or tests authorized by this division as shown by chemical analysis of the person's blood, urine or breath shall be admissible as evidence. . . .
 (b) Chemical analyses of the person's blood, urine or breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state board of health.
 (c) Only a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law-enforcement officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath or urine specimens.
Code 1975, § 32-5-193 (repealed, 1980 Ala. Acts, No. 80-434, § 15-106, replaced by Code 1975, § 32-5A-194 (Supp. 1980)). Strict compliance with the requirements of § 32-5-193 is a condition precedent to the admissibility of the results of tests made pursuant to the statute. Patton v. City of Decatur,337 So.2d 321 (Ala. 1976); Lankford v. Redwing Carriers, Inc.,344 So.2d 515 (Ala.Civ.App. 1977).
In the case of Rehling v. Carr, 295 Ala. 366, 330 So.2d 423
(1976), we enforced the plain wording of the statute to allow only *Page 976 
physicians, nurses, or laboratory technologists or technicians to take blood samples for alcohol content analysis. The plaintiff widow brought an action for injunction against the state toxicologist and a coroner seeking the return of a blood sample taken by the coroner from the body of the widow's deceased husband. Since there was no statutory authorization for a coroner to take blood samples for alcohol content analysis, we required that the blood sample be returned to the widow.
Although Code 1975, §§ 22-19-80 through -82, had not been enacted at the time, the Court of Civil Appeals decided that blood alcohol test results were inadmissible where the blood samples were taken by a mortician. In the case of Lankford v.Redwing Carriers, Inc., 344 So.2d 515 (Ala.Civ.App. 1977), the petitioner assigned as error the trial court's ruling that Ala. Code tit. 36, § 155 (1940) (Recomp. 1958) (Supp. 1973) (or Code 1975, § 32-5-193), applied only to cases in which living persons were being prosecuted for some violation of the law. The Court of Civil Appeals agreed with the petitioner and found that the statute applied to blood alcohol tests performed on the dead as well as the living. Additionally, the Court gave effect to the specific wording of the statute which made intoxication test results admissible not only in criminal actions, but also in civil proceedings.
Defendant argues that the legislature responded to the ruling in Lankford by enacting Code 1975, §§ 22-19-80 through -82. Defendant asserts that the sections make admissible test results derived from blood taken by a licensed embalmer.
 § 22-19-80. Authority of coroners, deputy coroners, state toxicologist and law enforcement officers; purpose of taking samples.
 (a) Each duly elected or appointed coroner in the state of Alabama is authorized to withdraw and retain or direct the withdrawal and retention of blood and/or urine from the dead body of a person who died unattended by a physician, or who died under suspicious circumstances, or where there is reasonable cause to believe the person died from unnatural and/or unlawful causes.
 (b) Each duly elected or appointed deputy coroner shall have the same authority to withdraw and retain or direct the withdrawal and retention of a blood and/or urine sample when acting for the coroner.
 (c) The state toxicologist and his designated or appointed assistants are authorized to withdraw and retain or direct the withdrawal and retention of blood and/or urine from the dead body of a person who died unattended by a physician, or who died under suspicious circumstances, or where there is reasonable cause to believe the person died from unnatural and/or unlawful causes.
 (d) A law enforcement officer investigating a fatal motor vehicle accident is authorized to direct the withdrawal and retention of blood and/or urine from the body of any such fatality.
 (e) The purpose of any withdrawal and retention of blood and/or urine shall be for analyses or studies to assist in determining the cause, manner and circumstances of death, including a chemical or other test or tests for drugs and/or poisons.
 § 22-19-81. Persons who may be directed to withdraw samples.
 Only a physician, registered nurse, duly licensed clinical laboratory technologist, clinical laboratory technician, mortician, licensed embalmer or licensed practicing embalmer may be directed by a coroner, deputy coroner, a law enforcement officer or the state toxicologist or his designated or appointed assistants to withdraw blood and/or urine for the purpose or purposes cited in section 22-19-80.
 § 22-19-82. Exemption from civil and criminal liability.
 (a) No coroner, deputy coroner, the state toxicologist and his designated or appointed assistants, mortician, licensed embalmer, physician, registered nurse, duly licensed clinical laboratory technologist or clinical laboratory technician or employers of the aforementioned persons *Page 977 
shall incur any civil or criminal liability as a result of the proper withdrawal or securing or retention of a blood and/or urine specimen as provided by this article.
 (b) The state toxicologist and his designated or appointed assistants shall incur no civil or criminal liability as a result of the proper analyses or studies of blood and/or urine specimens withdrawn and retained as provided in this article.
Code 1975, §§ 22-19-80 through -82.
In particular, defendant believes § 22-19-80 (e) speaks to the admissibility of the results of tests taken pursuant to the statutes.
We do not agree with defendant, because the sections do not address the evidentiary value accorded blood sample tests when the blood samples are taken by a mortician. They authorize state officers to collect blood or urine samples from the bodies of persons who die under "suspicious" or certain other circumstances and relieve the officer of civil or criminal liability which might be incurred. The purpose of the statutes, as set forth in § 22-19-80 (e), is to provide an investigative tool to aid officials in their determination of the cause, manner or circumstances of death.
The procedures established by § 32-5-193 insure reliability of test results, but §§ 22-19-80 through -82 have no procedure by which reliability of results is assured. In order to be reliable, and thus relevant to the matter at issue, results must be from generally accepted tests conducted under conditions which do not impeach the reliability of the testing procedure. Absent the predicate mandated by general evidence principles and without statutory procedure and other assurances of uncontaminated test results, the bare fact the legislature gave certain persons authority to take test specimens does not render the results of the tests admissible as evidence.
Since we have decided that § 22-19-80 does not control the admissibility of the blood alcohol test results, for the results to have been admissible, either defendant must have shown the tests were taken in conformity with § 32-5-193, or he must have laid the proper foundation for their admission under general evidence principles. It is manifest the tests were not taken pursuant to the guidelines set down in § 32-5-193, and we have examined the record and found absolutely no attempt to lay the foundation otherwise necessary. We find that the trial judge erred when it admitted the test results over plaintiff's objection.
Because the foregoing issue is resolved in plaintiff's (appellant's) favor, we do not address her challenge to the blood sample chain of custody.
MOTION DENIED; REVERSED AND REMANDED.
FAULKNER, JONES, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX, ALMON and ADAMS, JJ., concur in part and dissent in part.
* In any event, plaintiff properly presented the issues because each of the issues argued was in fact included as a ground in plaintiff's motion for a new trial. See, State v. Ward,293 Ala. 516, 306 So.2d 265 (1975) (decided before adoption of the ARAP).