This appeal is taken from a judgment based on a jury verdict in favor of the defendant in a wrongful death action, the case having been tried upon a count of wantonness only. We affirm.
Shortly after 11:00 p.m., February 20, 1980, John Burns Aycock (Aycock) was *Page 1276 
standing in front of his automobile, which was stopped in the west-bound lane of a two-lane county road and facing east. The lights of his car were not on, although it was dark and there was a very dense fog at his location at the time. The defendant, Sam Martinez (Martinez), returning home from work in his automobile in a westerly direction, collided with the Aycock vehicle, pinning Aycock between the two automobiles. Aycock died shortly thereafter from loss of blood. Suit was brought by Aycock's widow, Elizabeth Aycock (the plaintiff), as administratrix of Aycock's estate.
Martinez was the only surviving witness to the accident. He testified that, due to the fog, visibility was limited to one or one and one-half car lengths. The speed at which Martinez's car was traveling at the time of impact was controverted. The plaintiff's expert witness made estimates, based on various hypotheses incorporating highly conflicting testimony, which ranged from 24 to 48 miles per hour.
After Aycock's death, a sample of his blood was taken by the coroner, who was also a mortician, at the request of the officer who investigated the accident, and tested by the State Department of Toxicology. This test indicated that Aycock's blood alcohol level at the time of his death was 0.18 percent.
After the taking of depositions from the laboratory technician who ran the blood test and a toxicologist with the Department of Forensic Sciences, the plaintiff filed a motionin limine, seeking to suppress the results of the blood test. The motion was denied. On the morning of trial the plaintiff amended her complaint to eliminate her allegation of negligence, leaving only her wantonness count to be tried.
At trial, testimony relating to the blood test was admitted over the objection of the plaintiff. During closing arguments, counsel for Martinez made the following statement, to which plaintiff's counsel objected: "He's up here asking for two hundred thousand dollars from this young man who is three or four years out of high school."
In his charge to the jury, the trial judge read certain rules of the road, to which the plaintiff's attorney took exception.
The following issues are raised by the plaintiff on appeal:
 1. Did the trial court err to reversal in allowing evidence of Aycock's blood alcohol level based on the predicate laid by witnesses for Martinez?
 2. Did the trial court err to reversal in allowing evidence of Aycock's blood alcohol level where the only issue at trial was the alleged wantonness of Martinez, to which contributory negligence is not a defense?
 3. Did the trial court err to reversal in charging the jury concerning rules of the road allegedly violated by Aycock, where contributory negligence was not a defense?
 4. Did the trial court err to reversal in allowing Martinez's counsel to argue that the plaintiff "is up here asking for two hundred thousand dollars from this young man who is three or four years out of high school"?
We answer the first three questions in the negative. Because the fourth issue is not properly before us, we decline to answer it. For the sake of clarity, we discuss the issues separately.
 I.
In claiming that a proper predicate was not laid for the introduction of the results of the blood alcohol test, the plaintiff calls to our attention the case of McGough v.Slaughter, 395 So.2d 972 (Ala. 1981), in which the results of a blood alcohol test obtained under authority of Code 1975, §22-19-80,[1] was admitted into evidence. This Court held: *Page 1277 
 We find that compliance with § 22-19-80 alone does not make the blood tests admissible, and we hold that general evidence principles regarding admissibility of scientific test results are applicable. Because the circuit court admitted evidence for which no predicate was laid, we reverse.
McGough, supra, 395 So.2d at 974.
There are similarities between McGough and the case before us: 1. A blood test for intoxication was made where the blood sample was taken from a deceased person pursuant to Code 1975, § 22-19-80. 2. The blood sample was taken by an embalmer, or mortician. 3. The test was not taken in conformity with Code 1975, § 32-5-193.[2] We held in McGough that under these circumstances the test results are not admissible into evidence unless the party seeking their admission shall "have laid the proper foundation for their admission under general evidence principles." McGough, supra at 977. In that case we found that the proper foundation had not been laid; in the case before us, we find that it has.
While we find no Alabama cases which specifically outline all the requisite elements of a predicate for the admission of scientific test results, it is generally held that such a predicate must show that the circumstances of the taking of the sample, the identification, maintenance, and transporting of it, and the testing itself are scientifically acceptable and reasonably expected to produce results which are accurate and reliable. See, e.g., 29 Am.Jur.2d, Evidence, 830 (1967).
While in both McGough and the case before us the person drawing the blood sample did not follow a technique recommended by the Alabama State Board of Health, there are facts distinguishing the acquiring of the samples in the two cases. In McGough, the embalmer who drew the sample simply cut through the skin into the artery, without cleansing the skin in any way. He then caught the blood in a test tube which he had purchased at a drugstore. The sample was delivered for testing in that same tube. There was no evidence that any preservative was added to insure the stability of the sample. See McGough, Justice Maddox's dissent, at 978. In the case before us, the coroner-mortician who drew the blood sample cleansed the skin with soap and water, then cut into the artery and drained the sample into a drain tube, which is used by morticians to drain *Page 1278 
blood from dead bodies. The tube in question had been cleaned with clear water, and was dry. The sample was then transferred into sealed containers provided by the Department of Forensic Sciences for that purpose, with sodium flouride already in the containers as a preservative. The state toxicologist testified that this method of obtaining and maintaining the blood samples should have produced samples which could be relied upon for purposes of a blood alcohol test. She further testified that the great quantities of Ringer's Lactate Solution introduced into Aycock's system in an attempt to save his life could have no effect on the test, other than possibly to dilute the alcohol concentration in the blood. The laboratory file showed affirmatively that the specimen had suffered no decay during the time lapse between drawing the blood and actually running the test.
Although the plaintiff claims that the chain of custody was not shown, we disagree. The containers receiving the blood samples were immediately labeled with Aycock's name and date of death, and hand delivered to the officer who had requested them. He, in turn, filled out a regulation form requesting the test, which also showed Aycock's name, placed it, with the samples, into a padded mailing envelope, sealed it, and mailed it to the Department of Forensic Sciences in Auburn, Alabama. There, the package was received by a technician for the department, who found two blood samples labeled with Aycock's name and date of death. The technician gave them a case number and placed them in the department's refrigerator, where they were when she retrieved them in order to run the test. In proving the chain of custody, it may be presumed that articles regularly mailed are delivered in substantially the same condition in which they were sent. 29 Am.Jur., Evidence § 830 (1967). We find the chain of custody complete.
The test used by the technician in arriving at a blood alcohol level was gas chromotography. There was testimony regarding this test's recognition and acceptance by the Alabama State Board of Health as being scientifically reliable and a suitable test for determining alcohol content of the blood. Therefore, we conclude that the test was not inadmissible for lack of a proper predicate.
 II.
The plaintiff claims that the evidence of the blood alcohol test results, even if founded on a proper predicate, was irrelevant in this case, where contributory negligence was not an issue. The expert witness testified that the alcohol level in Aycock's blood might be expected to decrease judgment, cause emotional instability, cause a slowing of reaction time, and create the possibility of difficulty with gross motor functions and the probability of difficulty with fine motor functions. In charging the jury on this matter, the trial court made it clear that contributory negligence was not a defense to wantonness, and stated:
 Some testimony, which has been introduced as to any actions [or] the condition of the defendant only go to the overall picture for you to determine what was the proximate cause of the accident and after this, I will charge and read you a definition of proximate cause.
In charging the jury on wantonness, the court said:
 [A]ny testimony which goes to any of the plaintiff's actions or conditions only are to be used by you in determining whether the defendant was guilty of wantonness and not as to any contributory negligence or any cause of the accident by the plaintiff unless it was the proximate cause of the accident.
In Costarides v. Miller, 374 So.2d 1335 (Ala. 1979), this court held:
 We conclude that questions as to the relevancy of testimony [are] a matter ordinarily within the discretion of the trial court, and unless such discretion has been grossly abused, it will not be considered error on appeal. Harper v. Baptist Medical Center-Princeton, 341 So.2d 133 (Ala. 1976); Roan v. Smith, 272 Ala. 538, 133 So.2d 224 (1961); Occidental Life Ins. Co. *Page 1279 of Cal. v. Nichols, 266 Ala. 521, 97 So.2d 879
(1957).
Costarides v. Miller, 374 So.2d at 1337. In the case before us, we cannot say that the trial court abused its discretion in admitting the evidence.
 III.
The third issue raised by the plaintiff concerns the trial judge's charging the jury from Code 1975, §§ 32-5-150 and32-5-244 (rules of the road).[3] The plaintiff claims that these rules, as well as the evidence discussed in the second issue, can be considered only with regard to whether Aycock was guilty of contributory negligence, which is not a defense to a charge of wantonness.
On appeal, the entire charge must be reviewed to determine if there is reversible error. Wright v. Rowland, 406 So.2d 830
(Ala. 1981); Price v. Jacobs, 387 So.2d 172 (Ala. 1980). The trial court charged the jury at length on wantonness and proximate cause. Additionally, in introducing his reading from the rules of the road, he said:
 [I]n this case, which as I said is based upon wantonness, contributory negligence has no part or is no defense to wantonness, therefore, the law that I am going to give you now and reading the rules of the road, I do not give you that law or those rules of the road in that a violation thereof is a defense to the action of wantonness. Some testimony, which has been introduced as to any actions [or] the condition of the defendant only go to the overall picture for you to determine what was the proximate cause of the accident. . . .
At the conclusion of the section of his charge regarding rules of the road he stated:
 Also, Ladies and Gentlemen, I will charge you it is the Law of Alabama that one using the highways of this state may expect the others using such highway to obey the law until by the exercise of reasonable care it should have been evidence to him otherwise.
 Also, I will charge you that a driver of a motor vehicle must keep a lookout for those who are also using the highway and must exercise due care to anticipate presence of others on the highway. A motor vehicle driver is chargeable with knowledge of what a prudent and vigilant operator would have seen.
 Now, Ladies and Gentlemen, as I have said, all that portion of my charge goes to the point of letting you arrive at — in other words, in effect, as to whether there was wantonness or not, also, in whether or not if there was any wantonness, in your opinion as to whether that wantonness was the proximate cause of the accident. *Page 1280 
In reviewing the charge as a whole, we find no reversible error.
 IV.
Finally, the plaintiff complains that the court committed reversible error in allowing certain argument of Martinez's counsel. The record shows that the following transpired:
 MR. YOUNG: He's up here asking for two hundred thousand dollars from this young man who is three or four years out of high school.
 MR. SELF: We object to that last statement, the Law seals my lips on that and I think it ought to seal his, too.
THE COURT: Well, go ahead.
While any reference to wealth or poverty of a party is generally not permissible, there must be an adverse ruling by the trial court before this court will find error on the part of the trial court. See Village Toyota Company, Inc. v.Stewart, 433 So.2d 1150 (Ala. 1983). The record fails to show that the plaintiff requested a more definite ruling by the trial court, and in view of the fact that Martinez's attorney did not continue the line of argument which triggered the objection, one could as readily conclude that the judge had sustained the objection as that he had overruled it. The plaintiff did not request instructions to the jury that the argument of counsel was improper — a course of action which might have resulted in a clarified ruling. As there was no ruling adverse to the appellant, we find that this issue is not properly before us.
AFFIRMED.
TORBERT, C.J., and FAULKNER and EMBRY, JJ., concur.
ALMON, J., concurs in the result.
[1] § 22-19-80. Authority of coroners, deputy coroners, state toxicologist and law enforcement officers; purpose of taking samples.
(a) Each duly elected or appointed coroner in the state of Alabama is authorized to withdraw and retain or direct the withdrawal and retention of blood and/or urine from the dead body of a person who died unattended by a physician, or who died under suspicious circumstances, or where there is reasonable cause to believe the person died from unnatural and/or unlawful causes.
. . . .
(d) A law enforcement officer investigating a fatal motor vehicle accident is authorized to direct the withdrawal and retention of blood and/or urine from the body of any such fatality.
(e) The purpose of any withdrawal and retention of blood and/or urine shall be for analyses or studies to assist in determining the cause, manner and circumstances of death, including a chemical or other test or tests for drugs and/or poisons. (Acts 1977, No. 706, p. 1247.)
[2] § 32-5-193. Admissibility of results of test in evidence; presumptions; how and by whom tests made; immunity from liability; evidence of refusal to submit to test.
(a) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time of the chemical test or tests authorized by this division as shown by chemical analysis of the person's blood, urine or breath shall be admissible as evidence. . . .
. . . .
(b) Chemical analyses of the person's blood, urine or breath to be considered valid under the provisions of this section shall have been performed according to methods approved by the state board of health and by an individual possessing a valid permit issued by the state board of health for this purpose. The state board of health is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the state board of health.
(c) Only a physician, registered nurse or duly licensed clinical laboratory technologist or clinical laboratory technician acting at the request of a law-enforcement officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of breath or urine specimens.
[3] The portions of the code sections read to the jury are as follows:
 No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main-traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main-traveled portion of such highway; provided, that in no event shall any person park or leave standing any vehicle, whether attended, or unattended, upon any highway unless a clear and unobstructed width of not less than 15 feet upon the main-traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction upon such highway.
. . . .
 The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main-traveled portion of a highway in such manner and to such extent that it is impractical to avoid stopping and temporarily leaving such vehicle in such position.
 Whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between a half hour after sunset and half hour before sunrise and there is not sufficient light to reveal any person or object within a distance of 500 feet upon such highway, such vehicle so parked or stopped shall be equipped with one or more lamps which shall exhibit a white . . . light on the roadway side visible from a distance of 500 feet to the front of such vehicle and a red light visible from a distance of 500 feet to the rear. The foregoing provisions shall not apply to a motor-driven cycle.