[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1075 
The appellant, William David Britton, Jr., was convicted of murder and was sentenced to 20 years' imprisonment.
The state's evidence tended to show the following. On February 12, 1990, about 4:30 p.m., the appellant was driving a pickup truck north on U.S. Highway 31 in Flint City in Morgan County when his truck crossed the southbound lane and struck and killed 11-year-old Anthony Conner, who was riding a bicycle on the shoulder of the highway. There were no other vehicles in the area at the time of the incident. A non consensual blood alcohol test showed that the appellant was intoxicated at the time of the accident, having between .129 percent and .189 percent by weight of alcohol in his blood. According to witnesses, the appellant's truck was traveling between 60 and 80 miles per hour in a 30 miles-per-hour zone. The appellant's application of his truck's brakes left skid marks at the scene of the accident curving to the left for a distance of 148 feet. The appellant refused to take a breath test for blood alcohol content at the time of the accident.
The appellant testified that he had consumed two and one-half beers before the accident and that, at the time, his truck was traveling 50 miles per hour in a 30 mile-per-hour zone. He further testified that, as he approached the point where the accident occurred, he was faced with a pickup truck traveling south in his northbound lane and that to avoid the truck, he "swerved" his *Page 1076 
truck to the right and back to the left, crossing the highway in front of the oncoming vehicle and running off the road into a ditch. He said that at no time did he see the victim or anybody on a bicycle and that he did not know that his truck had struck the victim and did not think that he had. He was arrested at the scene of the accident and charged with driving under the influence. He appeals, raising four issues.
 I.
The appellant contends that the trial court committed reversible error in overruling his objection to the introduction of the result of a blood alcohol test taken over his objection while he was in custody. In support of his contention, he relies on the Alabama Implied Consent Act, §32-5-192, Code of Alabama 1975, and Thrower v. State,539 So.2d 1127 (Ala.Cr.App. 1988), in which this court held that, if the state attempts to proceed under § 32-5-192, the police could not force the defendant to submit to a chemical test to determine his blood alcohol level over his objection and refusal to submit. The state contends, inter alia, that the results of the blood test were admissible under Schmerber v.California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and that the Implied Consent Act is not the exclusive method for obtaining blood samples and admitting evidence of blood alcohol content. Schmerber held that a state could force a defendant to submit to a blood test to determine the level of alcohol in his blood without violating the defendant's Fifth Amendment right against self-incrimination, his right to due process, and his Fourth Amendment right to be free from any unreasonable search and seizure.
In this case, the appellant was arrested at the scene of the accident and was transported to the Morgan County jail. Immediately upon arriving at the jail, he was advised of the Implied Consent Act and was asked to submit to a breath alcohol test. He refused. The record reflects that, after his refusal, the chief of police of Flint City obtained a court order from the municipal court ordering the taking of a blood sample from the appellant. The appellant was taken to Decatur General Hospital, where a blood sample was taken by hospital personnel without his consent. His counsel was present at the time; he examined the court order; and he objected to the procedure on behalf of the appellant. After analysis, the blood test results indicated .089 percent by weight of alcohol in the appellant's blood. The blood sample was taken approximately four hours after the accident. An expert on the rate of absorption of alcohol in the human body, testifying for the state, stated that, in his opinion, if the appellant had .089 percent blood alcohol content approximately four hours after the accident, his blood alcohol content would have been between .129 percent and .189 percent four hours earlier, i.e., at the time of the accident. The appellant moved unsuccessfully before trial to suppress the blood test results, objected to the introduction of the evidence at trial, and raised the issue in his motion for a new trial.
In 1969, three years after the United States Supreme Court's decision in Schmerber v. California, the Alabama legislature enacted the Implied Consent Act, § 32-5-192, Act. No. 699, Ala. Acts 1969. The Act remedied many of the problems encountered in laying a foundation for the admission into evidence of intoxication test results, at least where the litigation arose from the operation of a motor vehicle. McGough v. Slaughter,395 So.2d 972 (Ala. 1981). "A party offering results from tests shown to be given in conformity with the statute is relieved of the burden of laying the extensive predicate generally necessary for admission of scientific test results." Id. at 975. However, strict compliance with the statute is required for the results of the tests made pursuant to the statute to be admissible. Id.
Compliance with the Implied Consent Act is not the exclusive means for admitting evidence of blood alcohol test results.Ex parte Love, 513 So.2d 24 (Ala. 1987); Russo v. State,610 So.2d 1206 (Ala.Cr.App. 1992). "[I]f a party wishes to have the results of a blood alcohol test admitted into evidence he has two choices; either he must show that the tests were taken in conformity with § 32-5-19[2], or he must lay the proper foundation for their admission under general evidence *Page 1077 
principles." Whetstone v. State, 407 So.2d 854, 857
(Ala.Cr.App. 1981).
We conclude that the authorities in this case did not proceed under § 32-5-192. They attempted to do so, but when the appellant refused to consent to the breath test, they obtained a court order from the municipal court, ordering that a blood sample be taken, and proceeded pursuant to that court order. This alternative procedure did not violate the appellant's Fourth Amendment rights. See Schmerber. Thus, contrary to the appellant's contention, § 32-5-192 does not apply here, and it is upon this fact that Thrower v. State is distinguishable from this case. If the evidence had been admitted under the Implied Consent Act, Thrower would be relevant, but the evidence here was neither obtained nor admitted pursuant to the Act.
We collaterally note that because the state did not proceed under the Act, it was incumbent upon it to lay a proper foundation for the admission of the appellant's blood alcohol test result under general evidentiary principles. This requirement was satisfied by stipulation. The appellant stipulated that the state did not have to prove the procedures followed in taking the blood, the chain of custody, and the testing procedures. The appellant also stipulated that the result could be admitted without the testimony of the person who performed the test.
The appellant further contends that the municipal judge did not have the authority to issue the order for the taking of the blood sample. We do not agree. Rule 16.2(b)(6), A.R.Cr.P., provides as follows:
 "Upon motion of the state/municipality and solely in connection with the particular offense with which the defendant is charged, the court shall order the defendant to:
". . . .
 "(6) Permit the taking of samples of defendant's . . . blood. . . .
". . . .
 "The defendant shall be entitled to the presence of counsel at the taking of such evidence. This section shall supplement and not limit any other procedures established by law."
Rule 1.4(g) defines "criminal court" as "any court of the State of Alabama or any political subdivision thereof with trial jurisdiction over an offense, as defined in Rule 1.4(s)." Rule 1.4(s) defines "offense" as "conduct for which a sentence to a term of imprisonment, or the death penalty, or for which a fine is provided by any law of this state or by any law, local law, or ordinance of a political subdivision of this state." Rule 1.1 provides: "These rules shall govern the practice of procedure in all criminal proceedings in all courts of the State of Alabama, and political subdivisions thereof, except as otherwise provided by court rule."
Clearly, the municipal court of Flint City had the authority to issue the order, because at the time the order was issued, the appellant was under arrest for driving while intoxicated, a municipal offense. While the municipal court order is not in the record and apparently was not introduced, its absence does not prevent us from addressing this issue. The appellant does not question the sufficiency of the order, he questions only the authority of the municipal court to issue it.
For the above reasons, we hold that the trial court properly admitted the result of the blood alcohol test into evidence.
 II.
The appellant contends that error occurred when statements made by him were admitted into evidence without proof of compliance with Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and without proof that the statements were voluntary. He refers in his brief to statements made by him at the scene of the accident to Chief of Police Charles Zanda and to Officer Michael Anthony Putman and to Councilman Carl Cowart while he was being transported to the Morgan County jail. He does not set out the specific statements in his brief. When the statements were made to Zanda and Putman, the appellant was not in custody and was not being interrogated. At the time the statements were made to Cowart, the appellant was in custody, but was not being interrogated. *Page 1078 
We are precluded from reviewing this issue as to the statements made to Zanda and Putman because the appellant made no objection to their admission into evidence and, therefore, the issue has not been preserved for our review. Rika v. State,587 So.2d 1054 (Ala.Cr.App. 1991). Moreover, even had the issue been preserved for review, it has no merit. These statements made shortly after the incident were either volunteered or were in response to routine on-the-scene questioning. The questioning of the appellant at the scene did not constitute custodial interrogation for the purpose of requiring Miranda
warnings, and the appellant's responses were voluntary. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the factfinding process does not require compliance with Miranda. Lemley v.State, 599 So.2d 64 (Ala.Cr.App. 1992). Volunteered statements of any kind are not barred by the Fifth Amendment, and their admissibility is likewise not affected by Miranda. Williams v.State, 601 So.2d 1062 (Ala.Cr.App. 1991). The statements at the scene were properly admitted into evidence. See Nagem v. Cityof Phenix City, 488 So.2d 1379 (Ala.Cr.App. 1986).
The statements made to Cowart were made in a police vehicle after the appellant had been arrested for driving under the influence of alcohol and while he was being transported to jail. Cowart, a city councilman, was accompanying the officer who was driving the vehicle. No Miranda warnings had been given the appellant. The record shows the following:
 "Q. [Prosecuting attorney Mr. Matthews]: Did you ride up here to the jail with Lieutenant Putman?
"A. [Cowart]: Yes, sir.
 "Q. Did you have any further conversation with the Defendant on the way up here or do you remember?
 "A. Yes, I do. Mr. Britton on three or four times, or three or four occasions, while en route to Morgan County jail, continued to ask Lieutenant Putman about the disposition of his vehicle; what would happen to it?
 "I commented to Mr. Britton on one occasion that if I were him, I wouldn't worry or concern myself about the disposition of my vehicle; but rather the condition of the young man that he had struck.
 "MR. SLATE [defense counsel]: We move to exclude that, Judge.
 "THE COURT: Wait just a second. He has made an objection.
"THE WITNESS: I'm sorry.
"THE COURT: Overrule your objection.
". . . .
 "Q. Tell us what the Defendant said when you all were having this conversation. Don't characterize it. Don't make a conclusion. Just what were the words? What did he say to the best of your memory?
 "A. Specifically he made the comment that he was more concerned about his vehicle.
"Q. Thank you.
"MR. MATTHEWS: Your Witness.
"CROSS-EXAMINATION
"BY MR. SLATE:
 "Q. His response was that he was more concerned about his vehicle. Is that your answer?
"A. Yes, sir."
Custody and interrogation are the two prerequisites that trigger the need for Miranda warnings. Miranda,384 U.S. at 477-78, 86 S.Ct. at 1629-30. Interrogation has been defined as express questioning or its functional equivalent. Rhode Islandv. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The functional equivalent of interrogation is "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301, 100 S.Ct. at 1689-90. Here, the appellant was in custody, but was not being interrogated. His inquiries about the disposition of his vehicle were volunteered. Cowart's comment to the appellant was not in the form of a question directed at the appellant and clearly did not constitute interrogation. Thus, there was no need at that point *Page 1079 
for Miranda warnings. The trial court properly overruled the objection.
Subsequently, Cowart was asked what the appellant said in response to his comment, and he stated without objection that the appellant expressed more concern about his vehicle than about the victim. While the response was not in the appellant's interest, he made no objection to it; therefore, the issue has not been preserved for our review. Rika v. State. Even had this issue been preserved, no error would have occurred. The appellant's comment did not result from interrogation. The appellant's statement was properly admitted into evidence. We note that immediately after the response, the appellant elicited the same response on cross-examination.
For the above reasons, we find no merit to this issue.
 III.
The appellant contends that the trial court committed reversible error in allowing into evidence the opinion testimony of Chief Zanda and State Trooper Eldon Shannon as to the speed of the appellant's vehicle immediately before he applied his brakes at the time of the accident.
The question of whether a particular witness may testify as an expert is largely discretionary with the trial court, and the trial court's decision will not be disturbed on appeal unless the trial court has abused its discretion. Henry v.Butts, 591 So.2d 849 (Ala. 1991). Where a proper scientific predicate is laid, an expert can testify concerning speed of a vehicle. McKelvy v. Darnell, 587 So.2d 980 (Ala. 1991); Baggettv. Allen, 273 Ala. 164, 137 So.2d 37 (1962); Henry v. Butts.
Zanda testified that he had attended the state police academy on two occasions for 40 hours each time, where he was trained in accident investigation and reconstruction. He stated that the training included use of a scientifically accepted formula for determining the minimum speed of vehicles involved in accidents. He testified that he investigated the accident in the instant case and that he collected the data necessary to determine the minimum speed of the appellant's vehicle using the formula. He testified in detail as to his method of gathering information, the measurements he made, and the photographs he observed. He stated that by using the formula, he determined the speed of the appellant's vehicle just before the appellant applied the brakes to have been 79.98 miles per hour.
Shannon testified that he had been a traffic homicide investigator since 1980; that he had 80 hours of training in the Huntsville Police Academy, 80 hours at the Calhoun State Trooper Academy, 200 hours at Northwestern University, which included advanced technical training, 80 hours at the University of Florida, and 80 hours advanced computer training, all in accident investigation and reconstruction; and that he had been trained to determine the minimum speed of vehicles involved in accidents by use of a scientifically accepted minimum speed formula. He discussed the formula and the data necessary to compute the speed of a vehicle. He testified that Zanda furnished him the appropriate data that had been developed from the scene, and that, applying this information to the formula, he determined that the minimum speed of the vehicle just before the brakes were applied was approximately 79 miles per hour, with a possible error of four or five miles per hour. Both Zanda and Shannon testified that the method they used in calculating the speed is accepted and used in the investigative community and taught in schools in connection with accident investigation and reconstruction.
The calculation of the speed of automobiles by mathematical computations is well known and has been approved by our courts.Maslankowski v. Beam, 288 Ala. 254, 259 So.2d 804 (1972); Hanksv. State, 562 So.2d 536 (Ala.Cr.App.), rev'd on other grounds,562 So.2d 540 (Ala. 1989).
We find that there was sufficient evidence from which the trial court could have found that Zanda and Shannon were qualified experts in accident investigation and reconstruction and in determining the speed of vehicles involved in accidents. We further find that the trial court did not abuse its *Page 1080 
discretion in allowing them to testify to their calculations concerning the speed of the appellant's automobile.
 IV.
The appellant contends that error occurred when the trial court refused to charge the jury on the lesser included offense of vehicular homicide. The appellant did not object to the court's refusal; therefore, the issue has not been preserved for review. Had the issue been preserved, we would find no merit to the contention. The trial court's failure to charge the jury on vehicular homicide as a lesser included offense of murder is harmless error where the jury was charged on the lesser included offenses of manslaughter and criminally negligent homicide and it rejected those offenses and found the defendant guilty of murder. Bartlett v. State, 600 So.2d 336
(Ala.Cr.App. 1991).
The appellant contends that the trial court erred in refusing to give his requested written charges 29 and 30. We do not agree. The trial court did not err in refusing to give these charges because they were misleading, would have confused the jury, were not applicable to the facts of the case, and, in the case of requested charge 30, incorrectly stated the law.Dill v. State, 600 So.2d 343 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993); Bogan v.State, 529 So.2d 1029 (Ala.Cr.App. 1988).
 V.
The appellant contends that the trial court erred in considering parole possibilities in determining his sentence. He was convicted of a Class A felony with a sentence range of from 10 years' imprisonment to life imprisonment. He was sentenced to 20 years' imprisonment. In passing sentence, the trial court said:
 "William David Britton, upon a jury of this county finding you guilty of murder, the Court will adjudge you guilty of murder and the Court does hereby sentence you to twenty (20) years in the state penitentiary.
 "I did that on the basis of if you have to serve that sentence, Mr. Britton, that you will probably serve about four years in the state penitentiary before you will be eligible for [parole]."
We find no error in the sentencing procedure. The sentence was legal and within the statutory range. Sentencing is within the exclusive realm of the trial court. Self v. State,459 So.2d 978 (Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053,105 S.Ct. 1756, 84 L.Ed.2d 819 (1985); Brazell v. State,423 So.2d 323 (Ala.Cr.App. 1982); § 13A-5-1. See also 24 C.J.S., CriminalLaw § 1472 (1989).
Having reviewed all issues raised by the appellant on appeal and finding no merit in them, we affirm the judgment of the trial court.
AFFIRMED.
All Judges concur.
 *Page 56