COBB, Judge,
dissenting.
On November 18, 2003, Carlis Dewey Adams was convicted of felony driving under the influence (“DUI”), a violation of § 32-5A-191(a)(l)[1] and (h), Ala.Code 1975.[2] Adams had three prior convictions for DUI.[3] Accordingly, the trial court sentenced him to five years in prison and imposed a $5,000 fine. On February 6, 2004, Adams filed a motion for a new trial, which was deemed overruled by operation of law March 8, 2004. This appeal followed.
The facts adduced at trial indicate the following. On May 3, 2003, Officer Thomas Jason Tuck passed Adams’s vehicle. Officer Tuck looked in his rearview mirror and noticed that the vehicle was not equipped with a “tag light.” Officer Tuck pulled Adams over. Adams and his wife had been riding around in the woods looking for her father. He was “a coon hunter” who liked to take his dogs into the woods and “turn them loose.” (R. 130-31.) Adams’s wife had dropped an alcoholic beverage in the floorboard of the car. When he approached the car, Officer Tuck detected a strong odor of alcohol. He asked Adams to step out of the vehicle. Officer Tuck administered several field so *1080 briety tests, all of which Adams failed. Officer Tuck transported Adams to the police station where a Draeger test was administered. Adams’s blood-alcohol content registered as .09.
Adams raises only one argument on appeal. He contends that the trial court erred by allowing the State to introduce the results of the Draeger test because the State failed to prove that Adams had been lawfully arrested before the test was administered. In its unpublished memorandum, the majority holds that Adams’s argument is not preserved, stating:
“[Djuring its direct examination of Officer Thomas Jason Tuck of the Lineville Police Department, the State elicited, without objection by the defense, testimony about the administration of the Draeger test. It also elicited, again without objection by the defense, testimony about the results of the Draeger test. (R. 61.) Subsequently, after the conclusion of [Officer] Tuck’s testimony, the State rested, and the defense made a motion to exclude the testimony about the Draeger test. ‘ “A motion to exclude or for a judgment of acquittal is not sufficient to preserve the issue if no timely objection was made when the evidence was offered.” Craig[ v. State, 616 So.2d 366, 366 (Ala.Crim.App.1993)].’ Draper v. State, 641 So.2d 1283, 1285 (Ala.Crim.App.1993). See also Douglas v. State, 629 So.2d 770 (Ala.Crim.App.1993). The appellant also raised this issue in his motion for a new trial. However, absent a timely and sufficient objection at trial, a motion for a new trial will not preserve an argument for appellate review. See Hamrick v. State, 548 So.2d 652 (Ala.Crim.App.1989). Because the appellant did not make an objection when the State offered the testimony about the Draeger test into evidence, he did not properly preserve this argument for our review. Accordingly, we affirm the trial court’s judgment.”
For the reasons stated below, I believe that we cannot expect Adams to have objected to the State’s offering into evidence the results of the Draeger test before he did so. I believe that the record before us makes this clear. Finally, I believe that Adams’s argument on appeal is meritorious, and therefore I cannot simply concur in the result to affirm Adams’s conviction and sentence.
At trial, the following relevant exchanges occurred during the prosecutor’s direct examination of Officer Tuck:
“[Prosecutor]: Okay. Are you here to tell the ladies and gentlemen of the jury that Mr. Adams was combative or belligerent?
“[Officer Tuck]: No, sir, he was not falling down—
“[Prosecutor]: Are you here to tell the ladies and gentlemen of the jury that Mr. Adams was combative or belligerent?
“[Officer Tuck]: No, sir. He was actually very compliant and very, very nice.
“[Prosecutor]: Okay. Are you here, however, to tell the ladies and gentlemen of the jury that based on what you saw, what you smelled, and what you heard, what you observed when you gave those tests, that in your opinion he was, in fact under the influence of alcohol?
“[Officer Tuck]: Yes, sir.
“[Prosecutor]: Okay. Did you then and there place him under the influence of alcohol (sic)?
“[Officer Tuck]: Yes, sir.”
(R. 53-54.)
“[Prosecutor]: [Officer Tuck], I believe you said that you had asked Mrs. *1081 Adams to step out of the vehicle and that you then discovered [the whiskey bottle and the receipt from its purchase]. Did — and that all of this took place after Mr. Adams was placed under arrest for driving under the influence?
“[Officer Tuck]: No, sir. It was not after. I did not place him under arrest until I had both him and Mrs. Adams outside the vehicle there with me.
“[Prosecutor]: Okay. All right. But in any way — In any event, at some point out there, you placed Mr. Adams under arrest for driving under the influence of alcohol?
“[Officer Tuck]: Yes, sir.
“[Prosecutor]: Subsequent to that, did you transport him to the police department there in Lineville?
“[Officer Tuck]: Yes, I did.”
(R. 57-58.) During cross-examination, the following occurred:
“[Defense counsel]: And it — on the video[4] you say, well, it’s a dry county. And when he’s asking you what are we going to do with the truck, my wife, you say well, I guess I’m going to have to take her in for [possessing an open container of alcohol]?
“[Officer Tuck]: That’s correct.
“[Defense counsel]: At no time did you ever tell her she was under arrest for [possession of an open container of alcohol], did you?
“[Officer Tuck]: No, sir.
“[Defense counsel]: Okay. At no time out there did you tell him he was under arrest. You told him that when he got the police department, didn’t you?
“[Officer Tuck]: That’s correct.”
(R. 110.)
“[Defense counsel]: And then after you gave him the Draeger Test and he went .09, you arrested him for DUI?
“[Officer Tuck]: No, sir.
“[Defense counsel]: Well, you told me—
“[Officer Tuck]: He was under arrest before I — I carried him to the police department.
“[Defense counsel]: Okay. Just a few minutes ago you told us you didn’t arrest him until you got him to the police department?
“[Officer Tuck]: No, sir. I told you I did not tell him he was under arrest. He had reason to believe he was under arrest. He knew he was under arrest.
“[Defense counsel]: Arrest for what?
“[Officer Tuck]: [Possession of alcohol in an open container[5]] and DUI.
“[Defense counsel]: Well, how would you know that he knew that if you didn’t tell him that?
“[Officer Tuck]: Because I didn’t come out and say you are under arrest. It’s easier when you talk to a subject like a person instead of, you know, you are under arrest. If you talk to a suspect that complaint [sic] to where they can understand it, it’s a lot better on you and the suspect.
“[Defense counsel]: So it’s your testimony you didn’t tell him you were going to have to take him and give him that test and if he didn’t pass that test, you *1082 were going to place him under arrest for DUI?
“[Officer Tuck]: No, sir, that’s not what I told him.”
“[Defense counsel]: Okay. But none of that is recorded, is it?
“[Officer Tuck]: No, sir.”
(R. 112-13.) After cross-examination concluded, the State redirected questions at Officer Tuck. Adams then recross-examined Officer Tuck. The State rested. Outside the presence of the jury, Adams moved to exclude the results of his Drae-ger test. When the State elicited testimony from Officer Tuck regarding the results of Adams’s Draeger test, it was unknown to both parties that Officer Tuck had not actually placed Adams under arrest and that, ultimately, on cross-examination, Officer Tuck would admit that he had not. Upon discovery of this information on cross-examination, Adams moved to exclude Officer Tuck’s testimony of the results of the Draeger test when he had the chance to do so outside the presence of the jury. I believe this motion was both timely and sufficient to preserve Adams’s argument on appeal.
As for the merits of Adams’s argument, “[t]he question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
“In 1969, three years after the United States Supreme Court’s decision in Schmerber v. California, [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966),] the Alabama legislature enacted the Implied Consent Act, § 32-5-192, Act. No. 699, Ala. Acts 1969. The Act remedied many of the problems encountered in laying a foundation for the admission into evidence of intoxication test results, at least where the litigation arose from the operation of a motor vehicle. McGough v. Slaughter, 395 So.2d 972 (Ala.1981). ‘A party offering results from tests shown to be given in conformity with the statute is relieved of the burden of laying the extensive predicate generally necessary for admission of scientific test results.’ Id. at 975. However, strict compliance with the statute is required for the results of the tests made pursuant to the statute to be admissible. Id.”
Britton v. State, 631 So.2d 1073, 1076 (Ala.Crim.App.1993) (emphasis added). The Implied Consent Act, § 32-5-192, Ala. Code 1975, provides, in pertinent part:
“(a) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 90 days; provided if such person objects to a blood test, the law enforce *1083 ment agency shall designate that one of the other aforesaid tests be administered.”
Section 32-5-192(a), Ala.Code 1975. (Emphasis added.)
“Probable cause to arrest for DUI must be followed by an actual arrest, Ex parte Love, [513 So.2d 24 (Ala.1987)], and that arrest must be ‘lawful’ within the meaning of § 32-1-4.” Hays v. Jacksonville, 518 So.2d 892, 894 (Ala.Crim.App.1987) (some emphasis in original; some emphasis added). An arrest consists of “ ‘an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody.’ ” New Hampshire v. Rocheleau, 117 N.H. 792, 793, 378 A.2d 1381, 1383 (1977) (quoting New Hampshire v. Wolfson, 116 N.H. 227, 229, 356 A.2d 692, 694 (1976), and citing E. Fisher, The Law of Arrest § 26 (1967)) (quoted in Cooper v. State, 474 So.2d 182, 184 (Ala.Crim.App.1985)) (emphasis added). This Court will reverse a conviction based on the erroneous admission of the results of a blood-alcohol test administered pursuant to the Implied Consent Act when, in fact, the defendant was not placed under arrest before the test was administered. See, e.g., Binion v. City of Montgomery, 541 So.2d 74 (Ala.Crim.App.1989).
Adams testified that Officer Tuck never told him he was under arrest. (R. 154.) He testified that Officer Tuck told him that if he “did not take the test that [he] would be presumed to be intoxicated and [he] would automatically be locked up.” (R. 156.) Nothing in the record indicates that Adams in any way explicitly consented to the Draeger test.
Additionally, by Officer Tuck’s own testimony, there was no question as to whether Adams had been formally placed under arrest before the Draeger test was administered. Officer Tuck admitted that he did not formally place Adams under arrest. As he explained on cross-examination, by testifying on direct examination that Adams had been placed under arrest, Officer Tuck meant that Adams should have known that he was under arrest. This is not a case of whether Adams should have been administered his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); whether “[a] reasonable person in the defendant’s position would have been aware of the fact that Officer Tuck was taking him or her into custody” is irrelevant in this case because Officer Tuck admitted that he purposefully did not place Adams under arrest. Whether Officer Tuck decided not to formally place Adams under arrest out of a sense of respect or out of fear that Adams would no longer be compliant is also irrelevant. The fact of the matter is that Officer Tuck admitted that he did not intend to formally take Adams into custody before the Draeger test was administered.
In order for a party offering results from blood-alcohol tests to be “relieved of the burden of laying the extensive predicate generally necessary for admission of scientific test results,” Britton, 631 So.2d at 1076, the statute, as stated above, must necessarily be strictly complied with. McGough v. Slaughter, 395 So.2d 972, 975 (Ala.1981) (referring to repealed § 32-5-193, Ala.Code 1975, a precursor to today’s Implied Consent Act). We note that “[t]he legislature did not prescribe any additional conditions which would equate implied consent, such as probable cause to arrest. Doubtless, this choice was intended to meet the Legislature’s concern for due process of law for the later possibility of the removal of the driver’s license of the motorist.” Ex parte Love, 513 So.2d 24, 29 (Ala.1987). Additionally,
“[t]he implied consent law’s repeated references to an arrest clearly manifest *1084 the legislature’s balance of the interests represented: the state’s interest in public safety and the individual’s interest in personal liberty. In that connection, the observations of Justice Eager in Schutt v. MacDuff, [205 Misc. 43, 52], 127 N.Y.S.2d [116] at 126-27 [(N.Y.Supp.1954) ], are appropriate here:
“ ‘Under this statute, as written, an auto driver may be restrained of his liberty without due process; that is, without process, he may be stopped on the highway by an officer and, thereupon, without process and without an arrest being made, a demand may be made upon him that he accompany the officer and submit to a test to determine whether or not he is intoxicated. Of course, it would be lawful for an officer to stop a motor vehicle driver upon the highway if the officer has reasonable grounds to believe the driver is intoxicated; and it is argued that there would be no involuntary action amounting to restraint in that the driver when stopped or approached by the officer has the choice of whether or not he shall accompany the officer and submit to the test as demanded by him. Such argument falls, however, for it is clear that everyone except possibly a hardened criminal or a very wise man would be under the feeling of some duress when any demand is made upon him by an officer of the law, especially if the officer is badged and armed. The feeling is natural and proper, and this court would not want it otherwise, for there must be respect for the authority of police officers. On the other hand, conferring upon police officers the right to make a request under the guise of authority concerning one’s person without specific process and without lawful arrest clearly amounts to an unlawful infringement upon one’s liberty.’ ”
513 So.2d at 30.
Therefore, based on Officer Tuck’s testimony that he purposefully did not place Adams under arrest, I believe the trial court erred by denying Adams’s motion to exclude the results of the Draeger test. I would reverse Adams’s conviction and remand this cause to the trial court. Therefore, I dissent.

.Section 32-5A-191(a)(l) provides that "[a] person shall not drive or be in actual physical control of any vehicle while [t]here is 0.08 percent or more by weight of alcohol in his or her blood.”

. Adams also pleaded guilty to the misdemeanor charges of driving with improper lights and driving with an open container of alcohol, but he does not take issue with those convictions on appeal.

. Two of the prior DUI convictions were from 1985 and one was from 1987.

. The stop was videotaped, but the audio portion of the tape worked only part of the time. Officer Tuck testified he was unfamiliar with the audio system and that he had accidentally turned it off.

. Section 32-5A-330(e), Ala.Code 1975, the “Open Container Law," provides that "[a] person who violates the provisions of this section is guilty of a Class C misdemeanor and, upon conviction, shall be fined not more than twenty-five dollars ($25), and court costs shall not be assessed."